**Jose Gutierrez RODRIQUEZ and Luis Mani, Appellants,**

v.

**The STATE of Texas, Appellee.**

No. 52322.

Court of Criminal Appeals of Texas.

March 9, 1977.

Rehearing Denied March 30, 1977.

Oscar J. Pena, Laredo, for Rodriquez.

Ruben Garcia, Laredo, for Mani.

Charles R. Borchers, Dist. Atty., Donato D. Ramos, Stephen A. Whitworth and Sharon S. Trigo, Asst. Dist. Attys., Laredo, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

REYNOLDS, Commissioner.

Indicted and prosecuted for murder, appellants were convicted of the offense of voluntary manslaughter. The punishment of each was fixed by the jury at confinement for twelve years.

The prosecution was under V.T.C.A., Penal Code § 19.02(a)(3),* which reads:

"§ 19.02.  *Murder*

"(a) A person commits an offense if he:

\*    \*    \*    \*    \*    \*

"(3) commits or attempts to commit a felony other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act

---

* All subsequent references to sections are to sections of the Texas Penal Code (1974).

clearly dangerous to human life that causes the death of an individual."

\*    \*    \*    \*    \*    \*

Omitting its formal parts, the indictment charges that appellants

". . . did, then and there commit a felony, to-wit: did then and there intentionally and knowingly carry on and about their persons a handgun while on certain premises licensed and issued a permit by the State of Texas for the sale and service of alcoholic beverages, to-wit: El Dandy Club Bar, 2619 Guatemozin, situated in Laredo, Webb County, Texas, and while in immediate flight from the commission of said offense the said JOSE GUTIERREZ RODRIGUEZ and LUIS MANI, then and there acting together, did commit an act clearly dangerous to human life, to-wit: did then and there discharge a handgun into the said El Dandy Club Bar, a business establishment at the time of the shooting, and did thereby cause the death of Jose T. Ramos by shooting him with the said handgun, . . ."

An evidential summary is that appellants entered the El Dandy Club Bar owned by Jose Trinidad Ramos, the deceased, and ordered beer. Sixteen or seventeen persons, including Ramos, were present. Appellant Rodriquez displayed a pistol, pointing it out the door and clicking it. Appellants were told to leave. They left and, once outside, called for Ramos to come out and talk with them. When Ramos started toward the door, the barmaid and a customer caused him to remain inside. Sounds of shots were heard. A bullet penetrated the bar building, striking Ramos in the head and killing him instantly. The pistol from which the fatal shot was fired was found under the front seat of a pickup truck appellant Rodriquez drove to a nearby bar owned by Mani. In a statement given by appellant Rodriquez after his arrest and introduced by him in evidence, he reported that the shot was fired by appellant Mani. Neither appellant testified during the guilt-innocence stage of the trial.

Initial attention is given to the fourth ground of error claiming that § 19.-02(a)(3) is unconstitutional for vagueness and indefiniteness. The infirmity is contended for on the theory that the section fails to show what culpable state of mind is required in the commission of the "act clearly dangerous to human life that causes the death of an individual." The novel contention has not heretofore been decided and, to resolve it, the enactment must be considered with other sections of the Penal Code, to which the rule of strict construction does not apply. § 1.05.

Section 6.02 of the Penal Code provides, in part, that

"(a) Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

"(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

"(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility."

From a consideration of these sections together, it logically follows that because § 19.02(a)(3) is silent as to, and does not plainly dispense with, the culpable mental state required for the underlying felony committed or attempted, § 6.02(b) mandates that the culpable mental state shall, as specified in § 6.02(c), be one of intent, knowledge or recklessness. Upon the establishment of the underlying committed or attempted felony embracing the requisite mental element, § 19.02(a)(3) then declares that an act which is committed in the course and furtherance of, or in immediate flight from, the underlying committed or attempted felony and which is clearly dangerous to human life and causes death shall constitute murder. Thus, the culpable men-

tal state for the act of murder is supplied by the mental state accompanying the underlying committed or attempted felony giving rise to the act. The transference of the mental element establishing criminal responsibility for the original act to the resulting act conforms to and preserves the traditional mens rea requirement of the criminal law. See, e. g., *Hilliard v. State*, 513 S.W.2d 28 (Tex.Cr.App.1974).

Consequently, § 19.02(a)(3) is not unconstitutional for its failure to specify the culpable mental state required for the act of murder. The fourth ground is overruled.

■ Consistent with this rationale, appellants' third ground, by which they say that the indictment was fatally defective because it failed to inform them of the culpable mental state with which they were charged in committing the act resulting in death to Ramos, is overruled. In view of what we have written, it is sufficient if the indictment alleges the culpable mental state attending the underlying felony committed or attempted. Here, the indictment alleged that appellants "intentionally and knowingly" committed the underlying felony.

For the same reasons, appellants' attack on the court's charge for its failure to charge on the culpable state of mind necessary for the alleged act of murder is not valid. To this extent, the fifth ground of error is overruled.

■ Appellants' first ground is that the possession of a weapon on premises licensed for the sale of alcoholic beverages is not the type of felony that will support an act of murder because it does not involve intentional violence. Suffice it to state, without an academic discussion of the views of courts of other states as presented in the briefs, that the legislature has seen fit to exempt only the felonies of voluntary and involuntary manslaughter, and we will not add to the statutory exemption. The first ground is overruled.

We now arrive at appellants' second ground which challenges, for three reasons, the sufficiency of the evidence to support the convictions. The first of these is that there is insufficient evidence to show flight.

To establish the offense charged, it was necessary for the State to prove its essential allegation that the killing occurred "while (appellants were) in immediate flight from the commission of" the felony offense alleged. The court charged the jury that

"'Flight' is the evading of the course of justice by voluntarily withdrawing one's self in order to avoid arrest or detention—the act of fleeing or escaping from danger."

The definition is substantially the one appearing in Black's Law Dictionary, Revised Fourth Edition.

■ Tested by the definition, the evidence is insufficient to prove an immediate flight from the commission of the underlying felony. The barmaid denied that she told appellants to leave and she did not notice that Ramos did. She said there was no kind of disagreement between Ramos and either one, or both, of the appellants. A customer testified that the barmaid did tell appellants to leave because they could not carry a gun there, and that Ramos told appellants it was his place of business and for them to move out. He said the appellants left immediately; they were not running and were not chased by anybody. When they were outside, appellants called for Ramos to come outside to talk with them, but, according to the barmaid, she stood in the door to stop Ramos from going out and, as the customer testified, another customer got hold of Ramos "so everything was all right." The shooting then occurred.

It is obvious that neither an arrest nor a detention of appellants was ever mentioned and that no overt act of either was threatened. No legitimate inference that appellants were fleeing from any danger can arise from the testimony about the acts of, or the conversations between, appellants and Ramos. Indeed, the testimonial facts are that appellants' departure was normal and that thereafter "everything was all right." In short, the evidence negates rather than establishes an immediate flight. To

this extent, the second ground of error is sustained.

For the failure of the State to establish an essential element of the offense charged, the judgments must be reversed. However, in the event of other proceedings, the following observations are noted.

■ Appellants' contention that the evidence is insufficient to show that Ramos' premises were properly licensed to sell alcoholic beverages because the license itself was not produced is not well taken. An inspector for the Texas Alcoholic Beverage Commission testified that he had custody and control of the records of licenses issued for establishments located in Webb County. The records revealed that a license, effective for one year, was issued to Ramos for his bar less than two months before his death; the license was not cancelled and it was in effect on the date of the offense alleged. Similar evidence caused a like contention to be rejected in *Reyna v. State*, 477 S.W.2d 564 (Tex.Cr.App.1972). In this respect, the second ground is overruled.

■ In view of the remand, we need not determine whether, as appellant Mani advocates in his sixth ground, the admission of the statement offered by appellant Rodriquez was reversible error. But, in the event of another joint trial and a proper objection to the admission of the statement, attention is directed to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), to *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and to their progeny. *Bruton* holds that the admission of a confession by a codefendant who does not testify deprives the other defendant, who is implicated by the confession, of his confrontation rights conferred by the Sixth Amendment to the United States Constitution. Even though the jury is instructed to disregard the hearsay admission in judging the non-confessing defendant, the harm is not obviated unless it can be said, under the holding of *Harrington*, that the case against the non-confessing defendant is so overwhelming that the admission of the confession is harmless beyond a reasonable doubt.

We pretermit any further discussion of the remaining contentions. They concern matters that either were not preserved for review or are not likely to recur or to recur in the same context.

Because the State failed to establish an essential element of the offense charged, the judgments are reversed, and the cause is remanded.

Opinion approved by the Court.