**Fabian Romero MINARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–91–00402–CR.**

Court of Appeals of Texas,
Dallas.

July 30, 1992.

Gary A. Udashen, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before STEWART, OVARD and KAPLAN, JJ.

## OPINION

STEWART, Justice.

A jury convicted Fabian Romero Minard of murder and assessed punishment, enhanced by a prior felony conviction, at ninety-five years' confinement and a $10,000 fine. Minard asserts six points of error on appeal. In his first and second points, Minard argues that the trial court erred in denying his motion for instructed verdict and that the evidence is insufficient to support the conviction. In his third through sixth points, Minard complains that the trial court erred in denying his requested jury instruction on the lesser included offense of involuntary manslaughter, granting the State's motion to amend the indictment, refusing to require the prosecutor to state

his reason for striking veniremember Gaiha, and overruling his objection to the portion of the prosecutor's closing argument that encouraged jurors to consider the parole law. We sustain Minard's fifth point of error and abate this appeal.

## FACTUAL BACKGROUND

Susan Grayson, the deceased, worked at the Red Bird Mall General Cinema. On September 14, 1990, at about 11:00 p.m., Grayson and Dominic Strickland drove to a nearby bank to make a deposit of $1469. A white Corvette followed them out of the mall parking lot and into the bank parking lot. The Corvette pulled up behind them, and the passenger, identified as Minard, jumped out of the car with a gun. While still behind Grayson's car, Minard pointed the gun at Grayson's side of the car and shot her. He then approached the car, demanded the money, and grabbed Grayson's purse. Minard returned to the Corvette and left the scene. When he realized that he had not gotten the money, Minard told his companion to drive back to the bank. Minard returned to Grayson's car and took the bag containing the money. When Minard returned to the Corvette, he told Hicks, "I think I killed her."

## SUFFICIENCY OF THE EVIDENCE

In his first two points, Minard contends that the trial court erred in denying his motion for an instructed verdict and that the evidence is insufficient to support his conviction because the facts of this case do not fit within section 19.02(a)(3) of the Texas Penal Code. Minard was indicted for murder based upon the felony-murder doctrine. *See* TEX.PENAL CODE ANN. § 19.-02(a)(3) (Vernon 1989). Section 19.02(a)(3) of the Texas Penal Code provides that a person commits an offense if he

commits or attempts to commit a felony, other than Involuntary Manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

*Id.* The amended indictment in this case alleged that Minard

commit[ted] a felony to-wit: then and there while in the course of committing theft of property and with intent to obtain and maintain control of said property of SUSAN GRAYSON and DOMINIC STRICKLAND, the said property being current money of the United States of America, without the effective consent of said SUSAN GRAYSON and DOMINIC STRICKLAND and with intent to deprive said SUSAN GRAYSON and DOMINIC STRICKLAND of said property, did then and there knowingly and intentionally threaten and place the said DOMINIC STRICKLAND in fear of imminent bodily injury and death, and the defendant did then and there use and exhibit a deadly weapon, to-wit: a firearm, and while in the course of and in furtherance of the commission of said felony offense, the Defendant committed an act clearly dangerous to human life, to-wit: discharge a firearm in the direction of SUSAN GRAYSON, an individual, and did thereby cause the death of said SUSAN GRAYSON.

The issue raised by Minard is whether the shooting of a person during the commission of an aggravated robbery, as alleged, constitutes murder under the felony-murder rule, thus relieving the State of its burden to prove that the defendant knowingly or intentionally caused the death. Minard asserts that the felony-murder doctrine, as provided in section 19.02(a)(3), requires a showing of felonious criminal conduct other than the assault causing the homicide. *See Garrett v. State*, 573 S.W.2d 543, 546 (Tex.Crim.App.1978). Minard argues that the shooting of Grayson was part of the aggravated robbery relied upon as the other felony and, thus, the assaultive act of discharging a firearm in her direction cannot be an act clearly dangerous to human life. He asserts that, because the only act alleged and proven as an act clearly dangerous to human life was the same assaultive act that formed the basis of the aggravated robbery prosecu-

tion, the evidence is insufficient to sustain the verdict. In essence, Minard argues that the merger doctrine bars his prosecution for felony murder.

■■■■ The felony-murder doctrine dispenses with any inquiry into the mens rea accompanying the murder itself. *Id.* at 545. The culpable mental state for the act of murder is supplied by the mental state accompanying the underlying committed or attempted felony giving rise to the act of murder. *Id.* (quoting *Rodriguez v. State,* 548 S.W.2d 26, 28–29 (Tex.Crim.App.1977)). The transference of the mental element establishing criminal responsibility for the original act to the resulting act conforms to and preserves the traditional mens rea requirement of the criminal law. *Garrett,* 573 S.W.2d at 545 (quoting *Rodriguez,* 548 S.W.2d at 29).

■■■■ The Court of Criminal Appeals in *Garrett* adopted the merger doctrine as a limitation on the felony-murder doctrine. *See Murphy v. State,* 665 S.W.2d 116, 119 (Tex.Crim.App.1983), *cert. denied,* 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 40 (1984). Under the merger doctrine, the felony-murder rule does not apply where the underlying felony is an assault causing the homicide. *Garrett,* 573 S.W.2d at 546. However, not every "assaultive" offense, if alleged as an underlying felony, will merge with the homicide in a felony-murder indictment. *Ex parte Easter,* 615 S.W.2d 719, 721 (Tex.Crim.App.), *cert. denied,* 454 U.S. 943, 102 S.Ct. 481, 70 L.Ed.2d 252 (1981). "The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein, as, *e.g., robbery* or larceny or burglary or rape." *Garrett,* 573 S.W.2d at 545 (emphasis added) (quoting *People v. Moran,* 246 N.Y. 100, 158 N.E. 35 (1927)).

Minard's reliance on *Garrett* is misplaced because that case is distinguishable. Garrett's conviction could not stand because the underlying aggravated assault and the act resulting in the homicide were one and the same. *See Murphy,* 665 S.W.2d at 119. There was no showing of felonious criminal conduct other than the assault that caused the homicide. *Id.* The Court of Criminal

Appeals has stated that the language found in *Garrett* should not be given an overly broad meaning. *Easter,* 615 S.W.2d at 721.

We find other cases to be more on point. In *Aguirre v. State,* 732 S.W.2d 320 (Tex. Crim.App.1987), Aguirre fired a shotgun at his ex-wife's door when she refused to speak to him. One of Aguirre's children was standing behind the door and was killed. The court held that the merger doctrine did not bar Aguirre's felony-murder conviction because the felonious criminal conduct, *i.e.,* committing felony criminal mischief by attempting to blow open a door with a shotgun, was a property offense, and the deceased was killed in the furtherance of this offense. *Id.* at 325. The court held that, unlike the situation in *Garrett,* the appellant's act of criminal mischief and the deceased's resulting homicide were not one and the same. *Id.*

In *Murphy,* the underlying offense alleged was arson. Murphy argued on appeal that the conduct that constituted the gist of the underlying felony, *i.e.,* starting a fire, was the same act alleged to have been clearly dangerous to human life and thus was inherent in the homicide. *Murphy,* 665 S.W.2d at 119. The court held that the indictment alleged and the evidence showed that Murphy was engaged in the felonious criminal conduct of arson at the time the deceased was killed and that, as required in *Garrett,* his act of arson in setting a habitation on fire and the resulting homicide were not one and the same. *Id.*

■■■■ Here, the indictment alleged and the proof showed that Minard was engaged in the felonious criminal conduct of aggravated robbery at the time that he shot Grayson. Although aggravated robbery is "assaultive" in nature, it also is a property offense that occurs in the course of committing theft. *See* TEX.PENAL CODE ANN. §§ 29.02(a) (Vernon 1989) (robbery committed if the defendant commits certain acts while in the course of committing theft) and 29.03(a) (Vernon Supp.1992) (aggravated robbery committed if the defendant commits certain acts while committing rob-

bery). Thus, there was a showing of felonious criminal conduct other than the discharging of the weapon that caused Grayson's death and a showing that her death occurred in furtherance of the commission of aggravated robbery. *See Aguirre,* 732 S.W.2d at 325; *Murphy,* 665 S.W.2d at 119. We conclude that, as required by *Garrett,* Minard's act of felony theft[1] and the act that resulted in Grayson's death were not one and the same. *See Aguirre,* 732 S.W.2d at 325; *Murphy,* 665 S.W.2d at 119. Accordingly, Minard's felony-murder conviction is not barred by the merger doctrine. We overrule Minard's first and second points.

## PEREMPTORY CHALLENGE

In his fifth point of error, Minard asserts that the trial court erred in not requiring the prosecutor to state his reasons for striking veniremember Gaiha. Following voir dire, Minard, who is African–American, objected to the prosecutor's use of peremptory challenges against several African–American veniremembers. The prosecutor argued that Minard had failed to make a prima facie case of discriminatory use of peremptory challenges and asked the trial court not to require him to articulate his reasons. The trial court stated that it wanted to hear the prosecutor's reasons, and the State explained these strikes.[2] The following then occurred:

[DEFENSE COUNSEL] Also, in regard to [article 35.261 of the Texas Code of Criminal Procedure], the State also struck another minority, juror number 38, Mr. Gaiha, who was an Indian, an Indian who appeared to be from India or of Indian extraction. And the statute specifically states that peremptory challenges done for racial reasons or against identifiable minorities is banned by our statutes. And we would state that also to strike number 38, to use a peremptory challenge in that regard meets our burden in regard to 35.261. And that the State has been shown to have violated this defendant's rights under Article 35.-261 of the Code of Criminal Procedure.

We would ask that the [c]ourt at this time, as the court is well aware and the record will reflect, the jury has not been sworn. We would as[k] that this jury panel not be sworn and that the panel be quashed and that a new panel be ordered up.

\* \* \* \* \* \*

[PROSECUTOR] With regard to juror number 38, Mr. Gaiha, first of all, Batson and its progeny does not extend to any minority, but only those that are of the same race as the defendant.

[DEFENSE COUNSEL]: Your Honor, in that regard, as we specifically stated, this motion is not made under Batson, it's made under Article 35.261 of the Code of Criminal Procedure. It is not Batson—

[PROSECUTOR]: If I could finish, Your Honor. Under Article 35.261, which is the statutory computation of Batson, that article has not been interpreted to be any more broad than the case of Batson v. Kentucky and the cases that follow it. Therefore, he has no basis to object to the exclusion of Mr. Gaiha. If the [c]ourt wants me to state my reasons to exclude Mr. Gaiha, then I'll do that.

THE COURT: Are you through?

[PROSECUTOR]: Yes, Your Honor.

THE COURT: It is the order of the [c]ourt that the State has specific reasons for exercising their preemptory [sic] challenges and that they were not prejudicial racially.

[DEFENSE COUNSEL]: Note our exception.

■■■ Article 35.261 of the Texas Code of Criminal Procedure allows a defendant to challenge strikes of veniremembers of racial groups different from his own. *State v. Oliver,* 808 S.W.2d 492, 496 (Tex. Crim.App.1991) (interpreting article 35.261

---

1. *See* Tex.Penal Code Ann. § 31.03(e)(4)(A) (Vernon Supp.1992) (theft is third-degree felony when value of property stolen is $750 or more but less than $20,000).

2. Minard raises no point of error on appeal concerning these strikes.

in light of *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). This interpretation of article 35.261 applies to any case not yet final at the time *Powers* was delivered. *Oliver*, 808 S.W.2d at 496. Thus, Minard can complain of the prosecutor's peremptory challenge of Gaiha, who was not African–American. We must determine whether Minard established a prima facie case of discrimination so as to require the prosecutor to explain this strike.

■■■ The State is required to explain its reasons for its exercise of peremptory challenges whenever the defendant in a criminal proceeding establishes a prima facie case that the prosecutor made racially motivated strikes against an eligible veniremember. *Linscomb v. State*, 829 S.W.2d 164, 165 (Tex.Crim.App.1992). To make such a case, the defendant must show that relevant circumstances raise an inference that the prosecutor used the peremptory challenge practice to exclude veniremembers on account of their race. *Id.* The prima facie case has been described as the minimum quantum of evidence necessary to support a rational inference; it is any relevant evidence with more than a mere modicum of probative value. *Id.* at 166. The defendant need not be of an identifiable race, nor need the wrongfully excluded veniremembers be of the same race as the defendant. *Id.* at 165 n. 6.

■■■ The trial court evidently found that Minard had established a prima facie case of discrimination as to the peremptory challenges of the African–American veniremembers because the trial court required the prosecutor to explain these challenges despite the prosecutor's argument that Minard had failed to establish a prima facie case. By establishing a prima facie case, Minard raised an inference that the prosecutor exercised some of his peremptory challenges in a discriminatory manner. Minard then could call to the trial court's attention any peremptory challenge that he alleged to be discriminatory. Minard was not required to establish a separate prima facie case for each veniremember or for each group of veniremembers about which

he complained. We conclude that Minard established a prima facie case and that, therefore, the prosecutor was required to explain his reason for striking Gaiha. *See id.* at 165. Accordingly, we sustain Minard's fifth point of error.

We abate this appeal and remand this cause to the trial court for a hearing within sixty days so that the prosecutor can explain his exercise of the peremptory challenge on Gaiha. A statement of facts of that proceeding and a transcript of documents relating to the proceeding shall be prepared and transmitted to this Court for further disposition.