11th Court
of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Gabriel Flores

Appellant

Vs.                   No.  11-01-00307-CR C Appeal from Jones County

State of Texas

Appellee

 

The jury convicted
appellant of felony murder of a 13-month-old child and assessed his punishment
at 40 years confinement. We affirm.  

In his first and
second issues on appeal, appellant argues that the trial court erred in denying
his motion to quash the indictment. The indictment contained two counts which
stated in part:

                                                          Count
One

[Appellant] did then and there commit a felony,
to-wit: injury to a child, and in the course of and furtherance of the
commission, [appellant] committed an act clearly dangerous to human life that
caused the death of an individual, to-wit: [the victim], an individual under
six (6) years of age, by manner and means unknown to the Grand Jury.

 

Count Two

 

[Appellant] did then and there intentionally or
knowingly cause serious bodily injury to [the victim], a person fourteen (14)
years of age or younger, by manner and means unknown to the Grand Jury.

 

Appellant first argues that the
trial court erred in overruling his motion to quash the indictment because the
indictment failed to provide him with notice of the particular offense for
which he was charged.  See TEX. CODE
CRIM. PRO. ANN. art. 27.08(1) (Vernon 1989). 
In his motion to quash the indictment, appellant complained that the
indictment did not Aset forth and allege any culpable mental state in any
part of Count One.@   








Count One of the
indictment tracked the felony murder statute. 
TEX. PENAL CODE ANN. ' 19.02(b)(3)
(Vernon 2003) provides that a person commits the offense of murder if he:

[C]ommits or attempts to commit a felony, other than
manslaughter, and in the course of and in furtherance of the commission or
attempt, or in immediate flight from the commission or attempt, he commits or
attempts to commit an act clearly dangerous to human life that causes the death
of an individual.  

 

The felony murder rule dispenses
with the necessity of proving mens rea accompanying the homicide itself;  the underlying felony supplies the culpable
mental state.  Johnson v. State, 4 S.W.3d
254, 255 (Tex.Cr.App.1999);  Ex parte
Easter, 615 S.W.2d 719, 721 (Tex.Cr.App.), cert. den=d, 454 U.S.
943 (1981); Rodriquez v. State, 548 S.W.2d 26, 28-29 (Tex.Cr.App.1977).  A person commits the offense of injury to a
child if he intentionally, knowingly, recklessly, or with criminal negligence
causes:  (1) serious bodily injury; (2)
serious mental deficiency, impairment, or injury; or (3) bodily injury to a
child.  TEX PENAL CODE ANN. ' 22.04(a) (Vernon 2003).  While TEX. PENAL CODE ANN. '
22.04(e), (f), & (g) (Vernon 2003) provides that the range of punishment
for injury to a child is determined by the mental state in which the offense
was committed, the offense of felony murder under Section 19.02(b)(3) is a
first degree felony regardless of the culpable mental state for the underlying
felony of injury to a child.     

In general, an
indictment must plead every element which must be proven at trial.   Dinkins v. State, 894 S.W.2d 330, 338
(Tex.Cr.App.), cert. den=d, 516 U.S. 832 (1995).  An allegation of an essential culpable
mental state is an element of the offense. 
Dinkins v. State, supra; Thompson v. State, 697 S.W.2d 413, 415
(Tex.Cr.App.1985).  Failure to include a
culpable mental state usually is a defect of substance.  Studer v. State, 799 S.W.2d 263
(Tex.Cr.App.1990); Ex parte Winton, 549 S.W.2d 751 (Tex.Cr.App.1977).  Normally, when there is a defect in
substance, there is a failure to charge a purported offense.  See Jackson v. State, 718 S.W.2d 724, 725
n.1 (Tex.Cr.App.1986).  








An indictment for
felony murder, however, is not fundamentally defective if it does not charge
all of the elements of the object felony. 
It is sufficient if the indictment alleges the underlying felony
committed (or attempted) and the culpable mental state attending the underlying
felony committed or attempted.  Rodriquez
v. State, supra at 29; Smith v. State, 540 S.W.2d 693, 697 (Tex.Cr.App.1976), cert.
den=d, 430 U.S.
922 (1977).  TEX. CODE CRIM. PRO. ANN.
art. 21.13 (Vernon 1989) also appears to require that an indictment for felony
murder include the culpable mental state for the underlying felony:

An indictment for
an act done with intent to commit some other offense may charge in general
terms the commission of such act with intent to commit such other offense.

 

The trial court erred in
overruling appellant=s motion to quash the indictment.  Appellant=s
first issue on appeal is sustained because of the omission of the culpable
mental state, although the indictment did not A[fail] to give [appellant] notice of the particular offense for which
he was charged.@

Although the trial
court erred, Cain v. State, 947 S.W.2d 262, 264 (Tex.Cr.App.1997), admonished:

Except for certain federal constitutional errors
labeled by the United States Supreme Court as Astructural,@ no error, whether it relates to jurisdiction,
voluntariness of a plea, or any other mandatory requirement, is categorically
immune to a harmless error analysis.

 

The court in Yandell v. State, 46
S.W.3d 357 (Tex.App. B Austin 2001, pet=n
ref=d), held that failure of an indictment under Section
19.02(b)(3) to allege a culpable mental state for the underlying felony, if it
was error, was an error of form that did not prejudice the defendant=s substantial rights. 
The defendant in Yandell had engaged in deadly conduct, firing
his weapon at a car in which the victim was sitting, and was convicted of
murder under Section 19.02(b)(3).  The
defendant in Yandell moved to quash the felony murder indictment on the
ground that it failed to allege that the defendant was Areckless@ as
to whether the vehicle was occupied. 
The trial court overruled his motion. 
On appeal, the court cited TEX. CODE CRIM. PRO. ANN. art. 21.19 (Vernon
1989) and then concluded that the omission of Areckless@ in the indictment did not prejudice the substantial
rights of the defendant.








We agree that, if
the omission of a culpable mental state for the underlying felony was a matter
of form, then Article 21.19 provides the test for harmless error.  The question is whether the omission is one
of substance or of form because the Code of Criminal Procedure categorizes
errors in a charging instrument as either defects of substance or defects of
form.  TEX. CODE CRIM. PRO. ANN. art.
27.08 (Vernon 1989) provides that there is no exception to the substance of an
indictment or information except for the four matters listed.  In his motion to quash, appellant attempted
to place Count One of his indictment within the first matter listed in Article
27.08:

1.                 
That it does not appear
therefrom that an offense against the law was committed by the defendant.

 

The defect was not
one described by the quoted portion of Article 27.08.  A written instrument is an indictment or information under the
constitution if it accuses someone of a crime with enough clarity and specificity
to identify the penal statute under which the State intends to prosecute, even
if the instrument is otherwise defective. 
Duron v. State, 956 S.W.2d 547, 551 (Tex.Cr.App.1997).  Ex parte Easter, supra and Ex parte Bailey,
600 S.W.2d 331 (Tex.Cr.App.1980), occurred before the Texas Constitution was
amended in 1985 to provide that the presentment of an indictment or information
invests the court with jurisdiction of the cause regardless of the number or
nature of defects in the charging instrument (TEX. CONST. art. V, ' 12(b)).  These
cases are instructive.  Both involved an
attempt to raise, by an application for writ of habeas corpus, a complaint that
the indictment was fundamentally defective because the indictment for felony
murder failed to allege a culpable mental state for the underlying felony of
injury to a child.  The indictments in
both cases tracked the felony murder statute as did Count One in the indictment
before us.  Both cases held that the
indictment was not fundamentally defective. 
The Bailey court stated:

The indictment sets
forth all the elements of the statute. 
We have held, since Standley v. State, 517 S.W.2d 538 (Tex.Cr.App.1975),
that only those indictments which fail to set forth an offense will be
considered fundamentally defective and susceptible to challenge for the first
time in a post-conviction writ of habeas corpus. 

 

Ex parte Bailey, supra at 332.








In the present
case, it cannot be said A[t]hat it does not appear [from Count One] that an
offense against the law was committed by the defendant@ as contemplated by Paragraph No. 1 of Article
27.08.  Count One identified Section
19.02(b)(3) as the penal statute under which the State intended to prosecute
appellant with sufficient Aclarity and
specificity.@  Based on the
rationale of Bailey and Easter, we agree with the Yandell
court=s conclusion that the omission of a culpable mental
state for the underlying felony is a defect of form; and, therefore, Article
21.19 provides the harmless error test for our review:

An indictment shall
not be held insufficient, nor shall the trial, judgment or other proceedings
thereon be affected, by reason of any defect of form which does not prejudice
the substantial rights of the defendant.

 

Under Article
21.19, determining whether the indictment=s
omission affected appellant=s substantial
rights turns on the question of whether appellant had notice adequate to
prepare his defense.  Adams v. State,
707 S.W.2d 900, 904 (Tex.Cr.App.1986); Yandell v. State, supra at 362.  The record reflects that appellant was fully
aware of the crime for which he was accused. 
Count Two in the indictment charged appellant with intentionally or
knowingly causing serious bodily injury to a child.  The facts of the case were simple.  The mother of the child left the sleeping child with appellant
while she went to his parent=s house to fix
appellant a sandwich.  She was gone only
five to ten minutes.  When she returned,
the child had been battered so badly that death followed shortly thereafter.  Appellant was the only person with the child
during those five to ten minutes.  Thus,
the indictment charged that appellant committed an act clearly dangerous to
human life that caused the victim=s
death by manner and means unknown to the grand jury.  

In his motion to
quash the indictment, appellant did not contend that his defense was impaired
by the wording of the indictment. 
Appellant makes no such contentions here.  Appellant did not file a motion for new trial to develop a record
of how appellant was harmed by the omission in the indictment.  Appellant=s
defense was to simply let the State prove its case.  It is difficult to imagine how appellant would have changed his
defense even if a culpable mental state for the underlying felony had been
alleged.  We find that appellant=s substantial rights were not prejudiced by the trial
court=s overruling the motion to quash.

Because Bailey
and Easter held that the omission in a felony murder indictment of a
culpable mental state for the underlying felony is not a fundamental defect,
the trial court=s error would still be subject to a harmless error
review under TEX.R.APP.P. 44.2(b) even if it were considered to be a defect of
substance.  Rule 44.2(b) provides:

Other errors.  Any other error, defect, irregularity, or
variance that does not affect substantial rights must be disregarded.








Thus, our analysis would be  the same whether the standard of review is
the one in Article 21.19 or the one in Rule 44.2(b).[1]

Appellant also
contends that injury to a child is a lesser included offense of manslaughter
and was, therefore, Astatutorily prohibited from supporting the felony
murder charge.@  In Johnson v.
State, supra, the court held that injury to a child is not a lesser included
offense of manslaughter.  The court
further stated that:  

We disavow our overly broad statement in Garrett[2]
that in order to support a conviction under the felony murder provision, A[t]here must be a showing of felonious criminal
conduct other than the assault causing the homicide.@ 

 

Johnson v. State, supra at
258.  Appellant=s second issue on appeal is overruled.








In his third issue
on appeal, appellant contends that the evidence is legally and factually
insufficient to support his conviction. 
In order to determine if the evidence is legally sufficient, we  review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979);
Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000).   In order to determine if the evidence is factually sufficient,
we review all of the evidence in a neutral light and determine whether the
evidence supporting guilt is so weak as to render the conviction clearly wrong
and manifestly unjust or whether the evidence supporting guilt, although
adequate when taken alone, is so greatly outweighed by the overwhelming weight
of contrary evidence as to render the conviction clearly wrong and manifestly
unjust.  Vasquez v. State, 67 S.W.3d
229, 236 (Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001);
Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d
126 (Tex.Cr.App.1996). We review the fact finder=s weighing of the evidence and cannot substitute our judgment for that
of the fact finder.  Cain v. State,
supra; Clewis v. State, supra.  Due
deference must be given to the jury=s
determination, particularly concerning the weight and credibility of the evidence.  Johnson v. State, 23 S.W.3d 1
(Tex.Cr.App.2000); Jones v. State, 944 S.W.2d 642 (Tex.Cr.App.1996), cert.
den=d, 522 U.S.
832 (1997).  This court has the
authority to disagree with the fact finder=s
determination Aonly when the record clearly indicates such a step is
necessary to arrest the occurrence of a manifest injustice.@  Johnson v.
State, supra at 9.

Marybel Cruz
Herrera, the 13-month-old victim=s
mother, testified at trial that she started dating appellant in March of
2000.  Herrera began living with
appellant in August 2000 in a small house behind appellant=s parents=
house.  Herrera moved out of the house
on August 31, 2000, because appellant was drinking and Acussed@ her out.  Herrera also stated that, on August 31 while
she was at work, appellant kept the victim. 
When she returned home from work, the victim had a bruise on her
forehead.  When Herrera asked him about
the bruise, appellant said that he did not know how it had happened.  

Herrera testified
that around September 5, 2000, she began talking to appellant again and that
she would sometimes stay with him at his house.  Herrera stated that on September 15, 2000, she went to her
parents= house and stayed until around 4:00 p.m.  Herrera left the victim with her parents and
returned to appellant=s house.  At
that time, appellant started drinking with his brother and a friend.  Around 9:15 p.m., Herrera and appellant went
to Misty Barrientes= house. 
Herrera testified that appellant had been drinking from 4:00 p.m. until
9:15 p.m.  Herrera wanted to drive to
the Barrientes= house, but appellant would not let her.  Appellant took beer with him to Barrientes= house.  

Herrera said that
her mother brought the victim to Barrientes=
house around 11:00 p.m. Around 11:30 p.m., appellant, Herrera, and the victim
left to go to appellant=s house. 
Herrera stated that she believed appellant was intoxicated and that she
did not want him to drive but that appellant would not allow her to drive.  Appellant fell getting out of the car when
they arrived at his house. 








Herrera testified
that, when they arrived at the house, she lay down with the victim until the
victim fell asleep.  Herrera then went
back into the room with appellant for awhile, and then appellant asked her to
go to the kitchen in his parent=s house and
make him a sandwich.  Herrera said that
she went to the kitchen and made appellant a sandwich.  She was gone for approximately five minutes.  

Herrera stated
that, when she returned from making appellant a sandwich, the lights were off
in the little house and that appellant met her at the door.  Herrera gave appellant the sandwich, but he
said that he did not want it because he was no longer hungry.  Appellant told Herrera that the victim had
woken up and was crying.  Appellant said
that the victim was fine, that he put her back to sleep, and that he did not
want Herrera to turn on the light. 
Herrera testified that appellant stood in front of her and walked right
next to her wherever she went.  Herrera
looked for a flashlight because it was so dark in the house.  After Herrera found the flashlight,
appellant took the flashlight away from her. 


Herrera testified
that she then heard the victim Abreathing with
difficulty.@  Appellant got
out of the way, and Herrera was able to go to the victim.  Herrera said that she insisted that
appellant turn on the light. 
Herrera  saw blood coming out of
the victim=s mouth and a bruise on the victim=s head. 
Herrera asked appellant  what
happened to the victim.  Appellant
responded that Ahe didn=t
know.@  Herrera asked
appellant to get the keys to the car, but appellant said that he could not find
them.  Herrera went and woke up
appellant=s parents to take the victim to the hospital.  Herrera said that she called her parents
from the hospital.  Herrera stated that
appellant left the hospital when she told him her parents were coming and that
the only time she saw appellant after that was in the courtroom.  








Dr. Michael William
Hart testified at trial that he received a call from the hospital on September
16, 2000, that there was a child with trauma, and that he needed to get there
as quickly as possible.  Dr. Hart said
that, when he arrived at the hospital, the victim was in Asevere distress.@  Dr. Hart testified that the victim Awas obviously already having deformity from her
injuries.@  The victim=s head was swollen, she was bleeding from her ear, and
she was not moving at all.  Dr. Hart
said that the victim=s eyes were already fixed and dilated and that the
covering of her eyes was drying.  Dr.
Hart stated that the victim=s head looked
as if it was deformed and that it was Avery
spongy and soft all on the right side.@  Dr. Hart testified that the victim did not
respond to Anoxious stimuli@
and that she had no spontaneous breath sounds. 
The victim died approximately 40 minutes after being brought to the
hospital.  

Dr. Robert Edward
Lyon, a forensic pathologist, testified that he performed an examination on the
victim on September 16, 2000.  Dr. Lyon
said that the victim died as a result of blunt impact injuries to the
head.  Dr. Lyon identified six head
injuries suffered by the victim, including skull fractures, tears of the brain,
tears of the covering of the inside of the skull,  hemorrhages of the retina and optic nerves, bruising of the
scalp, and abrasions of the skin.  Dr.
Lyon testified that it takes a considerable amount of force to cause the head
injuries  present on the victim.  Dr. Lyon indicated that the child would have
to fall from a height of approximately two stories onto a hard surface to
suffer the head injuries she exhibited. 
Dr. Lyon said that in his opinion the injuries were not caused by an
accident.  








Appellant
specifically argues that the evidence is legally and factually insufficient to
show that  he committed an act clearly
dangerous to human life that caused the death of the victim.  When reviewing a case comprised wholly of
circumstantial evidence, the standard of review is the same as it is for
reviewing cases in which direct evidence exists.  Kutzner v. State, 994 S.W.2d 180, 184 (Tex.Cr.App.1999); King v.
State, 895 S.W.2d 701, 703 (Tex.Cr.App.1995); Wilson v. State, 863 S.W.2d 59,
65 (Tex.Cr.App.1993).  Circumstantial
evidence, by itself, may be enough to support the jury's verdict. Kutzner v.
State, supra; see also Smith v. State, 965 S.W.2d 509, 515
(Tex.Cr.App.1998).  The record shows
that appellant was alone with the victim at the time she suffered a severe
injury to her head.  Appellant tried to
prevent Herrera from seeing the injuries to the victim.  The victim died as a result of blunt impact
injuries to the head.  The jury heard
testimony that the injuries to the victim were not caused by an accident.   The State called the foreman of the grand
jury who testified that, after a Athorough
investigation,@ the grand jury was unable to determine the means by
which appellant caused the victim=s
death.  See  Matson v. State, 819 S.W.2d 839, 847 (Tex.Cr.App.1991).  After reviewing all of the evidence in the
light most favorable to the verdict, we conclude that a rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  After reviewing all of the
evidence in a neutral light favoring neither party, we hold that the jury=s verdict is not so against the great weight of the
evidence as to be clearly wrong and unjust. Appellant=s third issue on appeal is overruled.

The judgment of the
trial court is affirmed.  

 

TERRY McCALL

JUSTICE

 

March 20, 2003

Publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











[1]We note that the court in Sanchez v. State, 32 S.W.3d
687 (Tex.App. - San Antonio 2000, pet=n
granted), found that a defect of substance in an indictment is not subject to Article
21.19 and the rule in Adams.  
The Sanchez court indicated that a defect of substance in the
indictment is not subject to a harm analysis. 
The court held, however, that the error in the indictment was harmful
under any harmless error analysis because the jury charge tracked the flawed
indictment, thereby authorizing the jury to convict without a finding on all of
the essential elements of the offense.          





[2]Garrett v. State, 573 S.W.2d 543 (Tex.Cr.App.1978).