Death Opinion










 




IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






AP-74,524




 


JORGE ALFREDO SALINAS, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


CAUSE NO. CR-3043-01-G IN THE 370
th DISTRICT COURT


HIDALGO COUNTY






 Meyers, J., delivered the opinion of the Court in which Keller, P.J., and
Price, Johnson, Hervey, Holcomb, and Cochran, JJ., joined. Womack and Keasler, JJ.,
concurred.






 Appellant was convicted in August 2002 of capital murder. Tex. Penal Code
Ann. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas
Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge
sentenced appellant to death. Art. 37.071 § 2(g). (1) Direct appeal to this Court is
automatic. Art. 37.071 § 2(h). Appellant raises six points of error. We reform
appellant's death sentence to a sentence of life imprisonment, and otherwise affirm.

 In point of error two, appellant claims the evidence is legally insufficient to
establish a specific intent to kill. In determining the sufficiency of the evidence, the
evidence is viewed in the light most favorable to the verdict to decide whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979).

 Appellant, his brother Lorenzo, and Oscar Villa Sevilla were at appellant's house
in Mission on the night of Saturday, July 28, 2001, smoking marijuana. Sevilla stated that
he wanted to get a gun and steal a car. Appellant said, "Let's see if you have the balls;
let's go." Appellant retrieved a shotgun that he had previously stolen and gave it to
Sevilla. Appellant and Sevilla walked to a nearby intersection. Sevilla jumped out and
pointed the shotgun at the first car to stop at the four-way stop. Geronimo Morales was
driving the car, and his 21-month-old child, Leslie Ann Morales, was in her car seat in the
back. Sevilla pounded on the window, and Morales opened the door. Sevilla got into the
driver's seat and forced Morales over to the passenger's seat. Sevilla handed appellant
the gun, and appellant pointed it at Morales. Morales cried and pleaded with them not to
hurt the baby. Appellant got into the back seat of the car while still pointing the gun at
Morales. Sevilla grabbed Morales by the hair and began hitting him. Sevilla asked
Morales for his money, but Morales stated that he did not have any. This made Sevilla
angry, and he beat Morales some more. Sevilla stopped the car, retrieved the gun from
appellant, and dragged Morales into some orchards and shot him. He stole Morales'
wallet, a gold ring, and a silver necklace with a skull on it.

 Sevilla returned to the car, and appellant suggested that they return to his house
and pick up his brother Lorenzo. When Lorenzo got into the car, he asked them what
they were going to do with the baby. Lorenzo suggested that they leave her at a store or
someplace where someone would find her, but Sevilla said they were going to dump her
where no one would find her. They drove to an area south of town about a half a mile
from the Rio Grande River, and close to La Lomita Mission. Appellant and Lorenzo (2)
took the baby out of the car, still in her car seat, and placed her in some tall grass.

 The three then drove Morales' car to Maria Alma Rosa Acevedo Pineda's house in
Reynosa, Mexico, arriving between 10:30 and 11:00 p.m. on July 28, 2001. Pineda's
husband was a first cousin to appellant and Lorenzo. Appellant initially told Pineda that
the car belonged to Sevilla. Lorenzo gave Pineda's son a silver necklace with a skull on
it, which was later identified as Morales' necklace. Later that night, appellant told Pineda
that he had something he wanted to tell her, but he was afraid she would tell someone
else. He then told her that they had "broken some guy," but Pineda did not believe him. 
Pineda stated that the phrase "broken some guy" means "to kill, to break, to shoot some
person." 

 The three cohorts tried to sell Morales' car in Reynosa, but were unsuccessful. On
Sunday, July 29, Reynosa police attempted to stop them while they were driving Morales'
car. A chase ensued, and they abandoned the vehicle. Reynosa police seized the car and
turned it over to authorities in the United States. The three cohorts returned to the United
States on Monday after selling the shotgun. Appellant told his girlfriend about what they
had done and took her to see Morales' body where they had left it.

 Leslie Ann's body was found by border patrol officers around 7 p.m. on July 29,
2001. The officers were patrolling south of La Lomita Mission near the river, looking for
illegal aliens who might be hiding in the grass. The patrol officer who testified stated that
the child was in an area where she was not likely to be found. Other testimony placed her
approximately fifteen feet from the road in grass that was two to three feet high. The
medical examiner testified that Leslie Ann died from dehydration, exposure to the
elements, and heatstroke.

 Morales' body was found on August 1, 2001. He died from a gunshot wound at
close range to the right side of the head.

 Appellant argues that the evidence does not support a finding that he had a specific
intent to kill anyone or to assist, promote, or encourage Sevilla in committing the
murders. He contends, "The only thing he intended to do, and agreed with, was to steal a
car at gun point." He claims Sevilla alone formulated, during the course of the robbery,
the specific intent to kill the victims. Appellant says the murders, at least on appellant's
part, were unintended, unplanned and random, spurred only by his co-hort's independent
impulse. He claims he could not have reasonably foreseen or anticipated Sevilla's actions
when they stole the car.

 The indictment charged appellant with capital murder in three separate counts. 
The first count charged him with the murder of Morales while in the course of
committing or attempting to commit robbery of him. The charge required the jury to find
that (1) appellant intentionally caused Morales' death while in the course of robbing him;
or (2) either Lorenzo or Sevilla had done so, under circumstances rendering appellant
responsible under the law of parties. The second count charged appellant with
committing the murders of Morales and Leslie Ann in the same criminal transaction. The
charge required the jury to find that (1) appellant intentionally or knowingly caused their
deaths; or (2) either Lorenzo or Sevilla had intentionally or knowingly caused their
deaths, under circumstances rendering appellant responsible under the law of parties, or
because the murders were the anticipated result of a conspiracy to commit another offense
(robbery). Appellant was charged in the third count with the murder of Leslie Ann, an
individual younger than six years of age. The jury charge required the jury to find that (1)
appellant intentionally or knowingly caused the death of Leslie Ann; or (2) either Lorenzo
or Sevilla had intentionally or knowingly caused her death, under circumstances rendering
appellant responsible under the law of parties, or because the murder was the anticipated
result of a conspiracy to commit another offense (robbery).

 The court submitted a separate jury charge for each count, along with a separate
verdict sheet for each count. The jury found appellant guilty of each count. Appellant
does not argue his insufficiency claim specifically as to any one or more of the counts. 

 Appellant's claim that the evidence does not support a finding that he had specific
intent to kill is applicable only to count one because that is the only theory under which
intentionally causing death is an element. His conviction could be supported under
counts two and three upon a finding that he acted intentionally or knowingly. Because the
jury found appellant guilty under each of the three theories separately, two of which do
not require a finding that applicant acted intentionally, appellant's argument regarding
legal insufficiency to prove specific intent is moot.

 In a conclusory statement, appellant also claims that the evidence is insufficient to
support a finding that appellant assisted, promoted, or encouraged Sevilla in committing
the murders. He further asserts that he could not have reasonably foreseen or anticipated
Sevilla's actions in killing the victims. We address these contentions in the interest of
justice.

 "Evidence is sufficient to convict under the law of parties where the defendant is
physically present at the commission of the offense and encourages its commission by
words or other agreement." Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App.
1994). Party participation may be shown by events occurring before, during, and after the
commission of the offense, and may be demonstrated by actions showing an
understanding and common design to do the prohibited act. Id.

 According to appellant's own confession, when Sevilla stated that he wanted to
commit a carjacking, appellant dared him to do it and provided him with a shotgun. 
Sevilla's intent to do more than steal the car was apparent. If Sevilla had intended only to
steal the car, he could have ordered Morales and Leslie Ann out as soon as he stopped the
car, and left them at the side of the road. Instead, Sevilla handed the shotgun to appellant,
who pointed it at Morales as Sevilla got in and drove to a remote area. Appellant did
nothing as he watched Sevilla drag Morales from the car and shoot him. Later, Sevilla
stated his plan to leave Leslie Ann where she could not be found, rejecting Lorenzo's
suggestion to leave her in a public place where she could be found. The evidence
supports the inference that appellant and Lorenzo removed Leslie Ann from the car, still
strapped in her car seat, and placed her in tall grass fifteen feet from a road and outside of
town. The evidence is sufficient to support a finding that appellant encouraged and
participated in, as a party, the murders of Morales and Leslie Ann. Point of error two is
overruled.

 In his first point of error, appellant claims that he was denied the effective
assistance of counsel at trial for several reasons. To establish ineffective assistance of
counsel, appellant must show by a preponderance of the evidence that his counsel's
representation fell below the standard of prevailing professional norms, and that there is a
reasonable probability that, but for counsel's deficiency, the result of the trial would have
been different. Strickland v. Washington, 466 U.S. 668 (1984); Mallett v. State, 65
S.W.3d 59, 62-63 (Tex. Crim. App. 2001). Review of counsel's representation is highly
deferential, and the reviewing court indulges a strong presumption that counsel's conduct
fell within a wide range of reasonable representation. Mallett, 65 S.W.3d at 63. A
reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of
an ineffective assistance claim. Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim.
App. 1999). "In the majority of cases, the record on direct appeal is undeveloped and
cannot adequately reflect the motives behind trial counsel's actions." Mallett, 65 S.W.3d
at 63. To overcome the presumption of reasonable professional assistance, "any
allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness." Thompson, 9 S.W.2d at 813
(citing McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).

 Appellant alleges that his trial counsel was ineffective because he did not file a
motion to transfer venue. Appellant claims he told his counsel that he wanted a change of
venue, and that he was prepared to file his own affidavit and the affidavits of two other
compurgators stating that the media coverage was incessant and the community sentiment
was overwhelmingly negative and antagonistic toward appellant. Appellant points to
nothing in the record in support of his allegations. In the absence of anything in the
record affirmatively demonstrating otherwise, we presume that his counsel made a
reasonable and strategic decision not to ask for a change of venue. See Mallet, 65 S.W.3d
at 63.

 Appellant also contends that his trial counsel was ineffective for failing to allow
appellant to testify on his own behalf at the guilt phase of the trial. Appellant claims his
counsel advised against testifying due to appellant's prior convictions, but appellant
remained adamant about wanting to testify. "Every criminal defendant is privileged to
testify in his own defense, or to refuse to do so." Harris v. New York, 401 U.S. 222, 225
(1971); see also Maddox v. State, 613 S.W.2d 275, 280 (Tex. Crim. App.
1980)(recognizing that attorney has duty to protect client's right to testify). However,
appellant's assertions in his brief on appeal, in the absence of anything in the trial record,
are insufficient to show that he asserted his right to testify and his attorney failed to
protect it. Mallett, 65 S.W.3d at 63.

 Appellant next contends that his trial counsel was ineffective for failing to file a
motion to quash the indictment or request a severance. Appellant claims that his
indictment charged him with three separate and distinct capital murders, (3) and contends
that trial counsel should have recognized the indictment as "defective, misjoined, or
subject to a severance." He complains that trial counsel should have filed a motion to
quash, a motion for election, or a motion for severance.

 Trial counsel did file a Motion to Quash and/or Sever in which he complained of
the three-count indictment and requested a severance of the charges. In the alternative,
counsel asked that the indictment be quashed. Finally, he asked that the State be required
to elect the charge on which it would proceed. The motion was addressed in a pretrial
hearing. Appellant's counsel did everything appellant contends he should have. (4)

 Finally, appellant claims that his trial counsel was ineffective for failing to request
an instruction on the lesser-included offense of felony murder in the court's charge at the
guilt phase of the trial. Although appellant's attorney requested and received a charge on
the lesser-included offense of murder, appellant argues that a charge on felony murder
would have been more appropriate.

 A charge on a lesser-included offense should be given when (1) the lesser-included
offense is included within the proof necessary to establish the offense charged; and (2)
there is some evidence that would permit a rational jury to find that the defendant is guilty 
of the lesser offense but not guilty of the greater. See, Rousseau v. State, 855 S.W.2d
666, 672-73 (Tex. Crim. App. 1993); Feldman v. State, 71 S.W.3d 738, 750-51 (Tex.
Crim. App. 2002). In meeting the second prong, there must be some evidence from
which a rational jury could acquit the defendant of the greater offense while convicting
him of the lesser-included offense. Feldman, 71 S.W.3d at 750. Felony murder is a
lesser-included offense of capital murder. Rousseau, 855 S.W.2d at 673. Culpable
mental state is the only difference between the two offenses. "Capital murder requires the
existence of an 'intentional cause of death,' . . . while in felony murder, 'the culpable
mental state for the act of murder is supplied by the mental state accompanying the
underlying ... felony....'" Id. (quoting Rodriguez v. State, 548 S.W.2d 26, 29 (Tex. Crim.
App.1977)).

 The second prong of the test is not satisfied here, however, because the evidence
did not raise any issue of felony murder. Appellant contends his counsel could have
reasonably argued that the evidence showed felony murder - that in the course of
committing a felony (robbery or kidnapping), and in furtherance of that particular felony,
appellant committed an act clearly dangerous to human life that resulted in the death of an
individual. The critical question is whether the evidence showed that appellant (as a
principal or a party) had the intent only to rob or to kidnap, and he did not have the intent
to kill. See Santana v. State, 714 S.W.2d 1, 9 (Tex. Crim. App. 1986). Dragging Morales
from the car and shooting him in the head with a shotgun at close range were not merely
acts clearly dangerous to human life that resulted in a death. Likewise, placing Leslie
Ann, a 21-month-old child, strapped into her car seat, in tall grass fifteen feet from a road
and outside of town, was not merely an act clearly dangerous to human life. Whether
appellant was the actual actor or criminally responsible for the acts of his cohorts by
virtue of the law of parties, the evidence shows not only an intent to commit robbery or a
lesser included offense, but also the intent to kill. Thus the evidence did not raise the
issue of felony murder. Appellant was not entitled to a charge on the lesser-included
offense of felony murder and therefore his counsel was not ineffective when he did not
request one. Point of error one is overruled. (5)

 In his fifth point of error, appellant claims that the trial court erred in denying his
motion to impose reasonable restrictions on the media's coverage of pretrial hearings. He
contends that such coverage might have tainted the jury pool.

 In a written motion entitled Motion to Restrict Publicity, appellant requested that
all pretrial hearings be held in chambers, outside the presence and hearing of the public
and press. At a pretrial hearing addressing the motion, appellant stated that he wanted to
restrict the media's coverage of pretrial hearings so that witnesses who would later be
placed under "the Rule" (6) during trial would not have access to certain information or
testimony via news reports on pretrial hearings. As an "alternative solution," appellant
suggested admonishing the witnesses, like the jury, that they were not to read the paper or
watch television. The court stated that it was not inclined to limit the media as broadly as
stated in appellant's written motion, but agreed that a witness admonishment like that
suggested by appellant at the hearing "may be a good practice." The court stated that it
would consider the option, but was not ready to rule on it at that time. The court asked
that appellant bring it to his attention later, before the Rule was invoked. Appellant does
not point to any place in the record where he ultimately obtained a ruling on the issue. In
stating that he was willing to accept an alternative solution to his complaint about media
reports on pretrial hearings, appellant therefore waived the complaint as raised in his
written motion. Further, in failing to obtain a ruling on his proposed alternative solution,
he failed to preserve that issue for review. (7) Tex. R. App. P. 33.1. Point of error five is
overruled.

 In his sixth point of error, appellant contends that because he was seventeen years
old when the crime was committed, assessment of the death penalty against him violates
the Eighth Amendment to the United States Constitution. In support of this claim,
appellant cites State ex rel. Simmons v. Roper, 112 S.W.3d 397 (Mo. 2003), in which the
United States Supreme Court granted certiorari to reconsider whether the Eighth
Amendment is violated by the imposition of the death penalty against a criminal
defendant who was seventeen years old when he committed the capital crime.

 The United States Supreme Court has since decided Roper v. Simmons, 544
U.S.___, 125 S.Ct. 1183, 161 L.Ed.2d 1. The Court has now held that the "Eighth and
Fourteenth Amendments forbid imposition of the death penalty on offenders who were
under the age of 18 when their crimes were committed." 125 S.Ct. at 1200, 161 L.Ed.2d
at 28. 

 There is evidence in the record that appellant was seventeen years old when he
committed the instant offense, and the State does not contend otherwise. The offense was
committed on or about July 28, 2001. Appellant's statement indicates that his birthdate is
April 1, 1984. The booking sheet, the arrest report, the arrest warrant, and the trial
court's docket sheet, all contained in the record, reflect that appellant's date of birth is
April 1, 1984. In addition, defense counsel referred to appellant repeatedly in closing
argument as a "17-year-old," and the State did not object. In view of the State's implied
concessions and the documents consistently reflecting appellant's birthdate, the record
adequately reflects that appellant was younger than eighteen years of age at the time of
the offense. Pursuant to the Supreme Court's mandate in Simmons, appellant's death
sentence is hereby reformed to a sentence of life imprisonment. Tex. R. App. P. 78.1;
Herrin v. State, 125 S.W.3d 436, 444 (Tex. Crim. App. 2002); Collier v. State, 999
S.W.2d 779, 782 (Tex. Crim. App. 1999). Point of error six is sustained.

 We modify the judgment of the trial court to reflect a sentence of life
imprisonment. (8) In all other respects, the judgment of the trial court is affirmed. (9)


Delivered May 18, 2005

Publish
1. Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal
Procedure.
2. This can be inferred because appellant's fingerprint was found on the bottom of the car
seat, and two of Lorenzo's prints were found elsewhere on the car seat. Sevilla's prints were not
found on the car seat. 
3. In a three-count indictment, appellant was charged with capital murder in the course of a
robbery, committing multiple murders in the same criminal transaction, and murder of a child under
the age of six.
4. Defense counsel ultimately withdrew his motion to sever after the trial court made clear
that it would not exclude evidence concerning the other counts, even if they were severed. Appellant
does not complain that his counsel was ineffective in withdrawing the severance motion.
5. Appellant also claims that his counsel was ineffective for failing to request an anti-parties
instruction in the court's charge at punishment. Because we sustain appellant's sixth point of error
and reform appellant's death sentence to a life sentence, any other complaints about alleged errors
in the punishment phase of the trial are moot.
6. Tex. R. Evid. 614.
7. Appellant's written motion also requested that five other restrictions be placed on the
media coverage of the case. At the hearing, the court granted some of those requests and denied
some of them. Appellant does not now appear to complain of any of those rulings.
8. We note that there are three separate judgments and death sentences in this case, one for
each count. Each judgment and sentence is hereby modified to reflect a sentence of life
imprisonment.
9. In points of error three and four, appellant complains about alleged errors in the
punishment phase. Because we reform appellant's death sentence to a sentence of life imprisonment,
points three and four are moot.