COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-532-CR

 

 

RICHARD BENJAMIN SMITH                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 297TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Richard Benjamin Smith
appeals his conviction and sentence for capital murder.  In nine issues, appellant complains that the
trial court erred by admitting certain out-of-court statements into evidence,
that the evidence is legally and factually insufficient to support his
conviction, that testimony from a State=s expert witness exceeded the witness=s expertise, that the statute authorizing his automatic life sentence
is unconstitutional, and that the trial court erred by not instructing the jury
on the lesser-included offense of murder. We affirm.

Appellant was tried and
convicted for the capital murder of Nasir Meraj, a convenience store clerk,
while in the course of committing or attempting to commit robbery.  The trial court=s charge instructed the jury that appellant could be found guilty of
the offense as a party.  The jury
returned a general verdict of guilty on the capital murder charge. 

In his fifth and sixth
issues, appellant contends that the evidence is legally and factually
insufficient to support his capital murder conviction under the law of
parties.  Appellant asserts that there is
no evidence he Awas >acting with intent to promote or assist the commission of= an intentional murder@[2] because he was, at most, merely present at the scene of the offense
and did not participate in the crime. Appellant further contends, without
elaboration, that there is no evidence he Awas on notice that an intentional murder was a possible result of the
carrying out of a conspiracy to commit [robbery].@[3] 








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.[4]  In reviewing the factual sufficiency of the
evidence to support a conviction, we are to view all the evidence in a neutral
light, favoring neither party.[5]  The only question to be answered in a factual
sufficiency review is whether, considering the evidence in a neutral light, the
fact finder was rationally justified in finding guilt beyond a reasonable
doubt.[6]  There are two ways evidence may be factually
insufficient:  (1) when the evidence
supporting the verdict or judgment, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment and,
weighing all of the evidence, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt.[7]

 








A person commits the offense
of capital murder if he intentionally commits murder in  the course of committing or attempting to
commit robbery.[8]
A person can be found guilty of capital murder as a party under the two
theories of criminal responsibility codified in section 7.02 of the penal code.[9]
Under section 7.02(a)(2), a person is criminally responsible for an offense as
a party if, acting with intent to promote or assist the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense.[10]  Further, section 7.02(b) provides that if, in
the attempt to carry out a conspiracy to commit one felony, another felony is
committed by one of the conspirators, all conspirators are guilty of the felony
actually committed, though having no intent to commit it, if the offense was
committed in furtherance of the unlawful purpose and was one that should have
been anticipated as a result








of the carrying out of the conspiracy.[11]  Thus, if the evidence is sufficient to
support appellant=s conviction
as a party under either section 7.02(a)(2) or 7.02(b), we must uphold the
conviction.[12]


In this case, Meraj was
brutally murdered just after 8:00 p.m. on October 17, 2002, during the course
of an armed robbery at the convenience store where he was employed.  Appellant=s counsel conceded at trial that he was present during the robbery and
murder.[13]








The evidence shows as
follows.  At around 7:00 p.m. on October
17, 2002, Felipe Gonzales went to the house of his cousin, Jesse Hurtado, to
borrow Hurtado=s
twelve-gauge shotgun.  Hurtado testified
that Felipe arrived in appellant=s car, which was probably driven by appellant.  Appellant waited in the car while Felipe
obtained the gun and ammunition.[14]


Appellant, Felipe, and Felipe=s brother, Fernando Gonzales Jr., then went to the convenience store
and began casing it at around 7:44 p.m. 
Over the next 32 minutes, the three men repeatedly entered and left the
store.  Appellant was the first to
enter.  He made a purchase, exited, and
then returned a short time later with Felipe. 
Appellant, and possibly Felipe, then obtained change from Meraj, and
both men went to the store=s back room which was used for a pool room.  From that point, appellant stayed in the
store until after the murder had occurred; however, he made several trips back
and forth between the pool room and the check-out counter. 








Felipe and Fernando also each
entered and exited the convenience store more than once.  Eventually, Fernando entered the store
carrying the shotgun.  Fernando pointed
the gun at Meraj, who emptied the contents of the cash register onto the
check-out counter.  Then, ignoring Meraj=s pleas, Fernando marched him into the back room, where he immediately
shot Meraj in the chest with bird shot. 
Next, Fernando shot Meraj in the head with a shotgun shell. Meraj=s head was essentially blown off. 
The crime scene was so gruesome that police had to lay down rolls of
brown paper to avoid walking on blood and brain matter. 

Meanwhile, as Fernando was
forcing Meraj into the back room, Felipe and appellant exited that room.  Appellant=s hands were raised to shoulder level for one or two seconds; then he
lowered them and walked towards the door as the two shots were being
fired.  He paused for a brief
conversation with Felipe, who was stuffing money from the cash register into
his pockets, and then exited the store following the second shot.  Felipe motioned to Fernando and hurried out;
Fernando followed a few seconds later. 
Although Felipe ducked when the first shot was fired and also reacted to
the second, appellant showed no reaction to either shot. 








After the crime, Fernando,
Felipe, and appellant returned to Hurtado=s residence in appellant=s car.  Felipe and Hurtado then
went to buy some beer.  Felipe used a wad
of cash to buy the beer and told Hurtado, Awe jacked somebody.@[15]  When the two men returned to
Hurtado=s home, Fernando (not Felipe) stated that Ahe just jacked somebody@; appellant and Felipe nodded their heads in agreement.[16]  Appellant later told jail staff that he had
killed someone. 

Based on all of this
evidence, we hold that the evidence is both legally and factually sufficient to
support appellant=s conviction
of capital murder as a party under both section 7.02(a)(2) and 7.02(b).  We overrule appellant=s fifth and sixth points.

In his first and second points,
appellant complains that the trial court improperly admitted Hurtado=s testimony that Fernando told him A[t]hat he [Fernando] just jacked somebody.@  Appellant contends that this
statement is inadmissible hearsay and that its admission violated his federal
constitutional right to confrontation.








Although Hurtado=s statement is hearsay,[17]
it was admissible under the statement-against-interest exception to the hearsay
rule if (1) it tended to expose the declarant,[18]
Fernando, to criminal liability, and (2) it was corroborated by circumstances
clearly indicating its trustworthiness.[19]  Appellant concedes that both of these factors
are present in this case.[20]
Obviously, the statement tended to expose Fernando to criminal liability
because he was admitting that he had just robbed someone.  Further, the statement was sufficiently
corroborated because Fernando was videotaped committing the crime.  In addition, at the time Fernando made the
statement, he, Felipe, and appellant had just returned Hurtado=s shotgun to him.  Therefore,
the trial court did not abuse its discretion by concluding that the statement
was admissible under this exception to the hearsay rule.[21]








Regarding appellant=s Confrontation Clause complaint, Fernando=s statement was admissible under the Confrontation Clause if it was
non-testimonial in nature and possessed adequate indicia of reliability.[22]  We have already concluded that Fernando=s statement possessed sufficient indicia of reliability because it was
corroborated by his videotaped actions. 
Moreover, the statement is non-testimonial in nature because it was made
at an informal gathering of friends drinking beer and not in court, before a
grand jury, or in response to police interrogation.[23]  Therefore, the trial court did not violate
appellant=s right to
confrontation by admitting the statement. 
We overrule appellant=s first and second points.[24]








In his third and fourth
points, appellant complains that the trial court improperly admitted Hurtado=s testimony that Felipe told him that Awe  jacked somebody.@  As with Fernando=s statement, Appellant contends that Felipe=s statement is inadmissible hearsay and that its admission violated
his federal constitutional right to confrontation.

Like Fernando=s statement, Felipe=s statement was admissible under the statement-against-interest
exception to the hearsay rule because (1) it tended to expose the declarant,
Felipe, to criminal liability, and (2) it was corroborated by circumstances
clearly indicating its trustworthiness.[25]  Further, although Felipe=s statement implicates himself and another person or persons, it is
nonetheless admissible under the statement-against-interest exception to the
hearsay rule if (1) it was sufficiently against Felipe=s penal interest, as well as the third party=s, to be reliable and (2) it was corroborated by circumstances clearly
indicating its trustworthiness.[26]








Here, the statement was
sufficiently against Felipe=s penal interest because it was an admission that he just robbed
someone.[27]  Further, the statement was sufficiently
corroborated because Hurtado testified that Felipe, accompanied by appellant,
had borrowed Hurtado=s shotgun
earlier that day, Felipe=s guilt was
not inconsistent with appellant=s, the statement was made to a relative, Hurtado, and the statement
was spontaneousCFelipe
offered it as an explanation for why he was carrying a thick wad of cash and
shortly after Felipe, Fernando, and appellant had returned Hurtado=s shotgun to him.[28]  Therefore, the trial court did not abuse its
discretion by concluding that the statement was admissible under this exception
to the hearsay rule.[29]  Moreover, because the statement was
non-testimonial in nature, the trial court did not violate appellant=s right to confrontation by admitting it.[30]  We overrule appellant=s third and fourth points.

In his seventh point,
appellant complains that the trial court erred by allowing a State=s expert witness, Grant Fredericks, to testify to matters that
exceeded his expertise.  This complaint
is not preserved for our review because appellant did not object at trial to
Fredericks=s testimony
based on his alleged lack of expertise.[31]  We overrule appellant=s seventh point.








In his eighth point,
appellant asserts that the trial court improperly overruled his motion to hold
that penal code section 7.02(b) is unconstitutional as applied to him because Ait allows him t[o] be convicted of capital murder without proof that
he possessed the requisite intent to kill.@   

Section 7.02(b) requires
proof of the intent to engage in a conspiracy to commit the felony offense that
resulted in the capital murder.[32]  AThe transference of the mental element establishing criminal
responsibility for the original act to the resulting act conforms to and
preserves the traditional mens rea requirement of the criminal law.@[33]  As we have discussed, there is
ample evidence that appellant intended to engage in the conspiracy to commit
the robbery that resulted in the capital murder in this case.  Therefore, section 7.02(b) is not
unconstitutional as applied to appellant.

Appellant further contends
that the penal code=s provision
for the assessment of an automatic life sentence in non-death penalty capital
murder cases Ais
unacceptable and incompatible with the commands of the Eighth and Fourteenth
Amendments.@  Appellant cites no relevant authority
supporting his








arguments.[34]  It is well settled that a mandatory life
sentence for the offense of capital murder is not unconstitutional.[35]  Therefore, the trial court did not err by
overruling appellant=s
motion.  We overrule appellant=s eighth point.








In his ninth point, appellant
complains that the trial court erred by refusing to instruct the jury on the
lesser-included offense of felony murder. 
Although appellant only requested a charge on Amurder,@ and not on
felony murder,[36]
he argues that he was entitled to a felony murder charge because (1) the murder
statute lists felony murder as a type of murder, and (2) there is no evidence
that he knew about the planned robbery or that the resulting murder would
occur.  Assuming for argument=s sake that appellant=s request for a charge on Amurder@ preserved
for our review his complaint that the trial court erred by not charging the
jury on felony murder, we hold, nonetheless, that the trial court did
not err by refusing the requested charge.

We use a two-pronged test to
determine whether a defendant is entitled to an instruction on a lesser
included offense.[37]  First, the lesser included offense must be
included within the proof necessary to establish the offense charged.[38]  Second, some evidence must exist in the
record that would permit a jury to rationally find that if appellant is guilty,
he is guilty only of the lesser offense.[39]









Felony murder and murder are
lesser-included offenses of capital murder.[40]
 The element distinguishing capital
murder from felony murder is the intent to kill.[41]  Felony murder is an unintentional murder
committed in the course of committing a felony.[42]  Capital murder includes an intentional murder
committed in the course of robbery.[43]  For a criminal defendant to be entitled to an
instruction on felony murder, there must be some evidence that would permit a
jury rationally to find that the defendant intended to commit the robbery but
not to cause the death of the victim.[44]  Whether the defendant intended to kill the
victim before the robbery took place is irrelevant; the issue is whether there
is any evidence that the defendant did not intend the victim=s death when the murder was committed.[45]


Appellant does not direct us
to any evidence that he intended to commit the robbery but not the resulting
murder.  To the contrary, appellant
simply argues that there is no evidence of his intent to commit either
crime.  He asserts that there is no
evidence that he knew about the robbery, that he knew Fernando had a gun, or
that he, himself, was armed.  He further
asserts that the fact that the video shows his hands raised briefly at one
point shows that he did not intend for the murder to occur. 








Even if we were persuaded by
these arguments, which we are not, they would not entitle appellant to the
lesser-included offense charge he requested. Evidence that shows no offense
occurred at all is not adequate to raise the issue of a lesser-included offense,
and a charge on a lesser‑included offense is not required in that
situation.[46]  Instead, the evidence must establish that if
a defendant is guilty, he is guilty only of the lesser included offense.[47]









Further, there is no evidence
that appellant did not intend to kill Meraj at the time the murder
occurred.  Rather, the evidence shows
that appellant made no attempt to stop Fernando from shooting Meraj or to leave
the store before or during the murder, made no statements or gestures to
Fernando or Felipe indicating that shooting Meraj was not part of the parties= plan, and showed no surprise or negative reaction to the shooting,
but instead conversed with Felipe while it was occurring.  In addition, appellant later told jail
personnel that he had killed someone. 
Appellant=s statement
to jail personnel was made in a joking manner; he did not indicate that the
killing was accidental or unintentional.     Finally,
appellant=s raising of
his hands for a second or two as he exited the store=s back room just before the shooting occurred is not, either alone or
when considered in the context of the other events on the videotape, evidence
that appellant did not intend for the killing to occur.  It is a normal reaction to raise one=s hands when a loaded gun is being brandished about, even if the
bullet is intended for something or someone else.  Further, appellant could have raised his
hands simply for show, for the store=s video surveillance cameras. Without some evidence indicating why
appellant raised his hands, the jury could only have speculated regarding his
reason for doing so.  Speculation does
not affirmatively raise an issue regarding a lesser-included offense.[48]

Because there is no evidence
that appellant did not intend Meraj=s death at the time the murder occurred, the trial court did not err
by refusing to charge the jury on felony murder.  Therefore, we overrule appellant=s ninth point.

Having overruled all of
appellant=s points, we
affirm the trial court=s judgment.

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL
F:    CAYCE, C.J.; LIVINGSTON and MCCOY,
JJ.

 

PUBLISH

 

DELIVERED: 
February 16, 2006











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. '
7.02(a)(2) (Vernon 2003).





[3]See
id. '
7.02(b).





[4]Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).





[5]See
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).





[6]Id. at
484.





[7]Id. at
484-85.





[8]Tex. Penal Code Ann. '
19.03(a)(2) (Vernon Supp. 2005); Hernandez v. State, 171 S.W.3d 347,
351-52 (Tex. App.CHouston
[14th Dist.] 2005, pet. ref=d.).





[9]See
Montoya v. State, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989)
(referring to both section 7.02(a) and section 7.02(b) as theories of party
liability), cert. denied, 502 U.S. 961 (1991); see also Tex. Penal Code Ann. '
7.01(a) (Vernon 2003) (AA
person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is
criminally responsible, or by both.@). 





[10]Tex. Penal Code Ann. '
7.02(a)(2).





[11]Id. '
7.02(b).





[12]Swearingen
v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003); Rabbani
v. State, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992), cert. denied,
509 U.S. 926 (1993).





[13]For
instance, the convenience store=s videotape showing the
robbery and murder was admitted into evidence at trial.  While cross-examining the State=s
expert witness about the videotape, defense counsel stated, A[F]or
simplification purposes, let=s just concede that suspect
one [on the video] is Richard Smith.@  Later, defense counsel asserted that A[i]dentity
was not really an issue in this case.@





[14]Hurtado=s
testimony about appellant=s
participation in obtaining the gun is somewhat inconsistent.  Initially, he testified that appellant and
Felipe arrived in appellant=s car, and appellant was
driving.  Later, however, Hurtado
testified that he only saw appellant Asomewhat@ and
could not be 100% sure that appellant was the driver, but believed it was
probably him because appellant and Felipe were the only two people who ever
drove the car around Hurtado. Hurtado did not see a third person in the
car.  He conceded that the driver could
have been Fernando, but reiterated that he had never seen anyone except
appellant and Felipe drive the car. 





[15]Hurtado
testified that to Ajack@
someone means to A[r]un
up on somebody, take them, take their money at gunpoint or knife or something,
any kind of weapon.@ 





[16]According
to Hurtado, Felipe first stated, Awe
jacked somebody,@ and
Fernando later stated that Ahe just
jacked somebody.@  [Emphasis supplied.]  Appellant was present and nodded his assent
only when the second statement was made.





[17]See Tex. R. Evid. 801(d).





[18]Appellant
complains that the statement was not against his penal interest; however, the
proper inquiry is whether the statement is against the declarant=s
interest.  Tex. R. Evid. 803(24).





[19]Id.; Bingham
v. State, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999). 





[20]For
instance, appellant states, AFernando=s
inculpatory statement about himself is sufficiently against his interest and is
corroborated by other evidence.@ 





[21]See
Bingham, 987 S.W.2d at 57.





[22]See
Woods v. State, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004), cert.
denied, 125 S. Ct. 2295 (2005); see also Crawford v. Washington, 541
U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004) (holding that, A[w]here
testimonial statements are at issue, the only indicium of reliability
sufficient to satisfy constitutional demands is the one the Constitution
actually prescribes:  confrontation@).  The requirements that the declarant be
unavailable and the subject of prior cross-examination apply only to
testimonial statements, not to non-testimonial ones.  See Crawford, 541 U.S. at 68, 124 S.
Ct. at 1374.





[23]See
id., 124 S. Ct. at 1374; Woods, 152 S.W.3d at 113-14.





[24]To
the extent appellant is complaining that Fernando=s
statement was inadmissible due to its irrelevance, he has forfeited this
complaint because he did not raise it below. 
See Tex. R. App. P.
33.1(a); Hailey v. State, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002), cert.
denied, 538 U.S. 1060 (2003).





[25]Tex. R. Evid. 803(24); Bingham, 987
S.W.2d at 57.





[26]Tex. R. Evid. 803(24); Dewberry v.
State, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999), cert. denied, 529
U.S. 1131 (2000).





[27]See
Dewberry, 4 S.W.3d at 751.





[28]See
id. (listing similar corroborating factors).





[29]See
id. at 752; Bingham, 987 S.W.2d at 57.





[30]See
Woods, 152 S.W.3d at 113-14.





[31]See Tex. R. App. P. 33.1(a); Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).  Likewise, we will not address appellant=s
one-phrase argument that Fredericks=s testimony Ainvaded
the province of the jury,@
because this complaint is not briefed.  See
Tex. R. App. P. 38.1(h); Tong
v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert. denied,
532 U.S. 1053 (2001).





[32]See Tex. Penal Code Ann. '
7.02(b).





[33]Rodriquez
v. State, 548 S.W.2d 26, 29 (Tex. Crim. App. 1977)
(rejecting constitutional challenge to felony-murder statute).





[34]The
two authorities appellant cites are inapposite. 
See Beck v. Alabama, 447 U.S. 625, 627, 100 S. Ct. 2382,
2384 (1980) (holding that a death sentence may not be imposed after a jury
verdict of guilt in a capital case when the jury was not permitted to consider
a verdict of guilt of a lesser-included noncapital offense and the evidence
would have supported such a verdict); Lockett v. Ohio, 438 U.S. 586,
607-08, 98 S. Ct. 2954, 2966-67 (1978) (holding Ohio death penalty statute
unconstitutional because it did not permit individualized consideration of
mitigating factors required by Eighth and Fourteenth Amendments in capital
cases).  We decline to apply the
reasoning of these cases by analogy to the penal code=s
provision for the assessment of an automatic life sentence in nondeath penalty
capital murder cases. 





[35]Harmelin
v. Michigan, 501 U.S. 957, 994‑95, 111 S. Ct. 2680,
2701 (1991); Barnes v. State, 56 S.W.3d 221, 239 (Tex. App.CFort
Worth 2001, pet. ref=d).





[36]Appellant=s
counsel stated:  AWe
would also request a charge on the lesser included offense of murder, Your
Honor.@ 





[37]Rousseau
v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert.
denied, 510 U.S. 919 (1993); Royster v. State, 622 S.W.2d 442, 446
(Tex. Crim. App. 1981).  





[38]Salinas
v. State, 163 S.W.3d 734, 741 (Tex. Crim. App.
2005);  Rousseau, 855 S.W.2d at 672-73;
Royster, 622 S.W.2d at 446.





[39]Salinas, 163
S.W.3d at 741; Rousseau, 855 S.W.2d at 672-73; Royster, 622
S.W.2d at 446.





[40]Threadgill
v. State, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). 





[41]Id.





[42]Tex. Penal Code Ann. '
19.02(b)(3) (Vernon 2003); Fuentes v. State, 991 S.W.2d 267, 272 (Tex.
Crim. App.), cert. denied, 528 U.S. 1026 (1999).





[43]Tex. Penal Code Ann. ' 19.03(a)(2);
Fuentes, 991 S.W.2d at 272.





[44]Threadgill, 146
S.W.3d at 665. 





[45]Fuentes, 991
S.W.2d at 272-73.





[46]Lofton
v. State, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001).





[47]Salinas, 163
S.W.3d at 741; Lofton, 45 S.W.3d at 652.

 





[48]Anderson
v. State, 125 S.W.3d 729, 734 (Tex. App.CTexarkana
2003, no pet.); see also Hall v. State, 682 S.W.2d 608, 609 (Tex. App.CBeaumont
1984, no pet.) (stating that Amere speculation, conjecture
or surmise@ does
not meet the second prong of the Royster test).  Indeed, when appellant=s
attorney hypothesized about this evidence at trial, the trial court sustained
the State=s
speculation objection, and appellant does not contest that ruling.