Opinion issued April 5, 2007









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-04-01145-CR

 __________



JASON SHAWN-MICHAEL BOOKMAN, Appellant


V.



THE STATE OF TEXAS, Appellee







On Appeal from the 338th District Court

Harris County, Texas

Trial Court Cause No. 958551






MEMORANDUM OPINION

 

 A jury found appellant, Jason Shawn-Michael Bookman, guilty of capital
murder and assessed punishment at life in prison. (1) In 10 points of error, appellant
argues that (1) the trial court erred in striking for cause a member of the venire, (2)
the trial court erred in denying his motion to suppress his three audio-taped
statements in violation of his federal constitutional right to due process, (3) the trial
court erred in allowing extraneous offense testimony that was irrelevant and unduly
prejudicial, (4) the trial court erred in refusing to allow a jury instruction on the
lesser-included offense of manslaughter, (5) the evidence was legally and factually
insufficient to show he intended to cause the complainant's death, and (6) the trial
court erred in denying his motion for new trial based on newly-discovered evidence. 
We affirm. 

Background


 On July 26, 2003, Joel Rivera and his friend Ryan Faircloth were leaving
Sam's Place on Richmond. As they walked to their car in the adjacent parking lot of
24-Hour Fitness, they were approached by appellant and another black man wielding
guns, one on each side of the vehicle: Faircloth by an unidentified man and Rivera
by appellant. Appellant and the unidentified man pointed guns on either side of the
car and demanded Rivera's and Faircloth's money. Faircloth testified that, after he 
learned that neither Rivera nor Faircloth had more than $8 cash but that they did have
ATM cards, appellant demanded that they take him to the ATM machine. Rivera
refused to go to the ATM machine, but Faircloth offered to go in his place. Faircloth
testified that he noticed that the unidentified robber did not have a magazine in his
gun, and, at that point, Faircloth started running. Faircloth stated that he yelled for
Rivera to follow, and, when he turned around, he heard a gunshot by the other robber,
later identified as appellant. Rivera was shot and later died from his wounds. 
Appellant was arrested for aggravated robbery and confessed to the shooting. 
However, appellant contends that the shooting was accidental. Appellant was
charged with capital murder, and the jury was instructed on capital murder and the
lesser-included offenses of felony murder and aggravated robbery.

Strike for Cause

 In point of error one, appellant contends that the trial court erred in granting
the State's strike for cause against venireman James Fry. During voir dire, Fry
expressed his reservations to considering the full range of punishment for murder: 

 Q. That would be a felony murder. The range of punishment is 5
years to 99 years or life. Could you consider that full range of
punishment if you found somebody guilty of committing a felony
and causing somebody's death even though it's not intentional?


 A. Yeah, I could see that.


 Q. Could you consider the minimum of five years even though they
caused someone's death?


 A. That would be a close call.


 Q. Okay. Well, I can't let you have a close call.


 A. Well, it would be hard to consider that, that small a sentence on
the cost of a person's death because a life is worth a whole lot
more than that.


 Q. Are you saying in a situation where someone is committing a
felony and they recklessly cause the death of someone else, that
you could not consider the minimum of five years in prison?


 A. I don't believe I could.


 The State:


 Ms. Allen: Your Honor, I move to strike for cause.


 The Court: Again, I'm taking from what you said, you can't consider it, correct?


 Venireperson: Yes, sir.


 The Court: Granted. Thank you for your time and service. You are
excused.Appellant contends that the State's questioning of venireman James Fry was not
shown to have an improper bias against felony murder. However, the record does not
reflect an objection from appellant to this strike. 


 To preserve a complaint for appellate review, a defendant must make a timely,
specific objection to the trial court. Tex. R. App. P. 33.1(a); see Wilson v. State, 71
S.W.3d 346, 349 (Tex. Crim. App. 2002). It is well-settled that, if an appellant fails
to object when a venireperson is excused for cause, he or she may not subsequently
challenge that ruling on appeal. 

Purtell v. State, 761 S.W.2d 360, 365 (Tex. Crim. App. 1988). 

 We overrule point of error one. 

Motion to Suppress



 In points of error two, three, and four, appellant asserts that the trial court erred
in failing to suppress his three audio-tape-recorded in-custody statements, which were
"rendered involuntarily, in violation of [his] federal constitutional right to due
process." 

Standard of Review


 We review the trial court's ruling on a motion to suppress evidence for abuse
of discretion. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). At a
suppression hearing, the trial court is the sole and exclusive trier of fact and judge of
the credibility of the witnesses and their testimony. Maxwell v. State, 73 S.W.3d 278,
281 (Tex. Crim. App. 2002). The appropriate standard for reviewing a trial court's
ruling on a motion to suppress is bifurcated: we defer almost totally to the trial
court's determination of historical facts and review de novo the court's application
of the law. Guzman, 955 S.W.2d at 89.


Analysis


 Appellant states that all three audio-tape recordings were rendered
involuntarily and in violation of his federal constitutional right to due process. 
Specifically, appellant complains that he was "improperly intimidated by the fact that
he was being arrested for capital murder"; therefore, "it cannot be said that . . . [the]
audiotape recorded statement[s were] the product of a free will and a rational
intellect." Appellant contends that the police officers during the interrogation did not
comply with Texas Code of Criminal Procedure articles 38.22 and 38.23, making the
recordings inadmissible at trial.

 At the suppression hearing, Houston Police Department Detectives Paul
Motard, Allen Brown, and Clemente Abbolandando ("Abby") testified to the
following facts:

 After the detectives procured a warrant authorizing appellant's arrest, they took
him into custody for Rivera's murder, then brought him to an interview room at the
police station. Officer Abby talked with appellant during the drive, and, once they
arrived at the station, Officer Abby read appellant his article 38.22 rights from "a blue
card" as follows:

 a. You have the right to remain silent and not make any statement
at all and that any statement you make may be used against you
at your trial;


 b. Any statement you make may be used as evidence against you in
court;


 c. You have the right to have a lawyer present to advise you prior to
and during any questioning;


 d. If you are unable to employ a lawyer, you have the right to have
a lawyer appointed to advise you prior to and during any
questioning;


 e. You have the right to terminate the interview at any time.

 

Appellant told Officer Abby that he understood the above rights and wished to waive
them. Officer Abby proceeded to conduct a "pre-interview" followed by a recorded
interview. Before the recorded interview, Officer Abby again read appellant his
rights. The State offered the recorded statement into evidence. Officer Abby left the
interview room, and Detective Brown began to interview appellant. Officer Abby
returned and continued to interrogate appellant on the record. Before beginning this
recorded session, Office Abby, for the third time, read appellant his rights. The State
offered this second recorded statement. After the second statement was made, Officer
Abby took appellant before a magistrate where he "received warnings in accordance
with the Code of Criminal Procedure." Upon returning from the magistrate, Officer
Abby began recording appellant's third statement, in which he admitted to robbing
and shooting Rivera but claimed that his gun accidentally discharged during a
struggle. 

 The record reflects that, prior to the third recorded statement, the following
exchange occurred:

 Ofc. Abby: Knowing all of [your rights], do you waive those rights and
we'll talk about this. Is that okay?


 Appellant: I don't know if it's the best thing to do, but I say we've
been doing it already, so I done already set myself up, but
it's a little late right now ain't it?


 Ofc. Abby: Well, that's up to you. We can talk or we don't have to
talk, whatever you would like to do.


 Appellant: Well, like I say, I guess we can continue to talk.


 Ofc. Abby: You feel comfortable talking? Want anything else to
drink? Something to eat?


 Appellant: No, I'm fine.


 Ofc. Abby: You all right talking?


 Appellant: Talking is the least of my problems right now, so I really it
ain't gonna, I don't see what, I don't know . . . .


 Ofc. Abby: I mean if, if you don't want to talk, we don't have to talk. 
It's up to you.


 Appellant: No, I want to talk.


The trial court overruled appellant's motion to suppress and admitted all three audio-tape recordings. 

 Article 38.22 section 3(a) prescribes the requirements to make oral custodial
statements admissible at trial and, article 38.22 section 2 codifies the Miranda
warnings required to be given prior to custodial confessions. Tex. Code Crim.
Proc. Ann. art. 38.22 §§ 3(a), 2 (Vernon 2005); Miranda v. Arizona, 384 U.S. 436,
479, 86 S. Ct. 1602, 1630 (1966). However, section 2 requires a fifth warning not
explicitly required under Miranda, namely that the accused "has the right to terminate
the interview at any time." Tex. Code Crim. Proc. Ann. art 38.22, §§ 2(a), 3(a)(1),
(2). All officers testified that Officer Abby read directly from the "blue card" the
Miranda warnings, which included the statement that appellant "had the right to
terminate the interview at any time." Appellant also testified that he understood the
warnings when given to him. Further, appellant failed to present any evidence that
he was "improperly intimidated" thus raising a voluntariness question; therefore, the
State need not prove voluntariness. See State v. Terrazas, 4 S.W.3d 720, 725 (Tex.
Crim. App. 1999) (when defendant presents evidence raising voluntariness question,
State must controvert evidence and prove voluntariness by a preponderance of the
evidence). Accordingly, we hold that the trial court did not abuse its discretion in
refusing to suppress the confession.

 We overrule points of error two, three, and four.

Extraneous Offense


 In points of error five and six, appellant argues that the trial court erred in
allowing testimony from Jonathan Gipson regarding appellant's admission that he had
committed another murder. Appellant contends that the testimony was irrelevant and
unduly prejudicial.

 After the State filed a notice of intent to use extraneous offenses at the guilt-innocence and punishment phases, appellant conducted a pre-trial voir dire
examination of Gipson, an acquaintance of appellant. Appellant objected that the
testimony presented an "inadmissible extraneous offense" and was irrelevant and
unduly prejudicial. The State argued that "Gipson's testimony . . . clearly goes to
intent, which is . . . the whole issue of [appellant's] defense . . . ." The trial court
overruled the objection. 

 During the State's case-in-chief, appellant renewed his objection, the trial court
overruled the objection, and Gipson testified as follows about a conversation that he
had with appellant:

 Q. So, was it your understanding that [appellant] got into a vehicle
with the victim?


 A. Yes.


 Q. Did there come a time where he told you about the actual
shooting of the victim?


 A. Yes.


 Q. What did [appellant] tell you?


 A. He told me that the guy got out and ran that's when he shot him.


 Q. So, it was your understanding from what [appellant] told you is
that the victim was running from him and that's when he shot
him?


 A. Yes.


 Q. Did [appellant] ever tell you the gun discharged in a struggle over
the gun?


 A. The way I received it, I didn't think it was a struggle.


 Q. Did he say to you, or in any way indicate to you that he had not
intended to kill the victim?


 A. Repeat the question.


 Q. Did [appellant] ever say, I didn't mean to do it, anything like that?


 A. No, it wasn't like that; wasn't really like that.


 Q. Did he make a comment about how difficult or easy it was to
shoot the victim?


 A. I mean, yes, it was easier the second time.


Standard of Review 

 We review a trial court's admission of extraneous offense evidence for an
abuse of discretion. Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996);
Wolfberg v. State, 73 S.W.3d 441, 443 (Tex. App.--Houston [1st Dist.] 2002, pet.
ref'd). A trial court does not abuse its discretion as long as its decision to admit
evidence is within the "zone of reasonable disagreement." Montgomery v. State, 810
S.W.2d 372, 391-92 (Tex. Crim. App. 1991). Further, a trial court's decision
regarding admissibility of evidence will be sustained if correct on any theory of law
applicable to the case, even when the court's underlying reason for the decision is
wrong. Romero v. State, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).

Relevancy

 Rule 404(b) states that evidence of extraneous offenses is not admissible at the
guilt-innocence phase of a trial to prove that a defendant committed the charged
offense in conformity with a bad character. Tex. R. Evid. 404(b); Nobles v. State,
843 S.W.2d 503, 514 (Tex. Crim. App. 1992). Extraneous offense evidence may be
admissible, however, when it has relevance beyond character-conformity, for
example, to show proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident. Moses v. State, 105 S.W.3d 622, 626
(Tex. Crim. App. 2003). Rebuttal of a defensive theory is "one of the permissible
purposes for which relevant evidence may be admitted under Rule 404(b)." Id. Thus,
identity, intent, and the rebuttal of defenses are valid purposes for admitting evidence
pursuant to Rule 404(b). Johnson v. State, 68 S.W.3d 644, 651 (Tex. Crim. App.
2002) (extraneous offenses were relevant to establish a scheme of robbing to show
that the murder was committed during the course of the robbery to support a capital
murder indictment).

 Extraneous offense evidence may become admissible to help prove intent only
if the intent required for a conviction for the primary offense is a contested issue in
the case. McGee v. State, 725 S.W.2d 362, 364 (Tex. App.--Houston [14th Dist.]
1987, no pet.). Intent can be characterized as a contested issue if (1) the required
intent for the primary offense cannot be inferred from the act itself or (2) the accused
presents evidence to rebut an inference that the required intent existed. Id. Intent is
most clearly in issue when, as here, the defendant argues that the charged offense was
unintentional or the result of an accident. See Johnson v. State, 932 S.W.2d 296, 302
(Tex. App.--Austin 1996, pet. ref'd). Once the defendant makes a claim such as
accident, mistake, or lack of intent, then intent can no longer be inferred from other
uncontested direct evidence, and the State is allowed to prove intent through evidence
of other crimes, wrongs, or acts. Id. (defendant's offer of partial confession that he
did not mean to kill decedent and testimony of ballistics expert showing gun shot
higher than point of aim placed intent at issue and allowed admission of other robbery
with gun).

 Appellant asserts that there was no need for the jury to learn that he supposedly
killed before, in an unadjudicated prior extraneous offense, for the purpose of
establishing appellant's alleged intent in this case. The State contends that the
statements were relevant to rebut appellant's argument that he did not intentionally
shoot Rivera. We agree with the State. (2) 

 We hold that the trial court did not abuse its discretion by admitting the
testimony of Gipson based on relevancy because it was relevant to the issue of intent
to rebut the defensive theory of accident. 

 We overrule point of error five.

Unduly Prejudicial

 Even if it is found to be relevant, evidence may be excluded under rule 403 if
the probative value of the evidence is substantially outweighed by the danger of
unfair prejudice. Tex. R. Evid. 403; Moses, 105 S.W.3d at 626. Courts should
consider the following factors under a rule 403 analysis: (1) the strength of the
extraneous offense evidence to make a fact of consequence more or less probable; (2)
the potential of the extraneous offense to impress the jury in some irrational but
indelible way; (3) the time during trial that the State requires to develop evidence of
the extraneous misconduct; and (4) the need by the State for the extraneous evidence. 
Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). At appellant's
counsel's request, the trial court did not give a limiting instruction to the jury
regarding the extraneous offenses. 

 Because intent was at issue, Gipson's testimony made a fact of consequence,
that appellant acted intentionally, more probable. Gipson was one of 15 witnesses
who testified at appellant's trial. The complained-of testimony constituted one line
out of more than 600 lines of testimony given by Gipson. The testimony recounted
a mere statement by appellant that this was the second time that he had done this. It
provided no details, much less any gory details of the prior incident. Appellant's
counsel mentioned Gipson's testimony in his closing argument, but only regarding
the credibility of the witness, not the content of the testimony offered. The State did
not mention Gipson's testimony in its closing arguments. Appellant has not shown
that the verdict was unduly prejudiced by Gipson's testimony.

 We hold that the trial court did not abuse its discretion by admitting extraneous
offense evidence that was unduly prejudicial.

 We overrule point of error six.

Charge Error

 In point of error seven, appellant contends that the trial court erred in
overruling his objection to the jury charge that failed to contain an instruction on the
lesser-included offense of manslaughter.

Standard of Review

 A charge on a lesser-included offense should be given when (1) the
lesser-included offense is included within the proof necessary to establish the offense
charged and (2) there is some evidence that would permit a rational jury to find that
the defendant is guilty of the lesser offense but not guilty of the greater. Salinas v.
State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005). In meeting the second prong,
there must be some evidence from which a rational jury could acquit the defendant
of the greater offense while convicting him of the lesser-included offense. Id. 

 Felony murder is a lesser-included offense of capital murder. Id. Culpable
mental state is the only difference between the two offenses. "Capital murder
requires the existence of an 'intentional cause of death,' . . . while in felony murder,
'the culpable mental state for the act of murder is supplied by the mental state
accompanying the underlying . . . felony . . . .'" Rodriquez v. State, 548 S.W.2d 26,
28-29 (Tex. Crim. App. 1977). Manslaughter is a lesser-included offense of the
offense of murder. Moore v. State, 969 S.W.2d 4, 9 (Tex. Crim. App. 1998). 
Manslaughter requires proof that the defendant acted recklessly, that is, that he
consciously disregarded a substantial risk of which he was aware. See Tex. Pen.
Code Ann. §§ 6.03(c), 19.04(a) (Vernon 2006).

Analysis

 Appellant contends that there is evidence to support the charge of
manslaughter. Specifically, appellant denies that he intentionally killed Rivera. 
Appellant admits, however, that he intentionally robbed Rivera, but states that, after
Rivera grabbed for the gun, it accidentally went off. That appellant may have
recklessly caused Rivera's death does not entitle him to an instruction on
manslaughter under the facts of this case. 

 Appellant admits that he robbed Rivera. A homicide committed in the course
of a robbery does not comprise the offense of manslaughter; rather, it constitutes at
the very least, the offense of felony murder as defined by Texas Penal Code section
19.02(b)(3). See Lee v. State, 860 S.W.2d 582, 587 (Tex. App.--Houston [14th Dist.]
1993, pet. ref'd). Under section 19.02(b)(3), a person commits the offense of felony
murder if, in the course and furtherance of committing a felony, the person commits
an act clearly dangerous to human life that causes the death of an individual. Tex.
Pen. Code Ann. § 19.02(b)(3) (Vernon 1994); Rousseau v. State, 855 S.W.2d 666,
673 (Tex. Crim. App. 1993). Appellant admits the commission of the underlying
robbery. Thus, whether he recklessly, rather than intentionally, caused the death of
Rivera at most raises the issue of felony murder. A jury could not rationally find
appellant guilty only of manslaughter. See Ross v. State, 861 S.W.2d 870, 876 (Tex.
Crim. App. 1993); Gadsden v. State, 915 S.W.2d 620, 623 (Tex. App.--El Paso 1996,
no pet.).

 Accordingly, we conclude that the trial court did not abuse its discretion in not
including an instruction on manslaughter. We overrule point of error seven.

Sufficiency

 In points of error eight and nine, appellant argues that the evidence was legally
and factually insufficient to support his conviction for capital murder because the
record fails to show that he had the intent to cause the death of the complainant. 

Standard of Review

 The standard for reviewing the legal sufficiency of the evidence is whether,
after reviewing the evidence in the light most favorable to the verdict, any rational
trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979). 

When conducting a factual-sufficiency review, we view all of the evidence in a
neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will set
the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong
and manifestly unjust or (2) the verdict is against the great weight and preponderance
of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2003). 

 Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury's resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The fact-finder alone determines what weight to place on contradictory testimonial evidence
because that determination depends on the fact-finder's evaluation of credibility and
demeanor. Cain, 958 S.W.2d at 408-09. As the determiner of the credibility of the
witnesses, the fact-finder may choose to believe all, some, or none of the testimony
presented. Id. at 407 n.5.

Analysis

 Appellant claims that the evidence was insufficient to support the conviction
for capital murder as a matter of law and fact because the record fails to show that
appellant had the intent to cause the death of the complainant at the time of the
alleged offense. Appellant contends that the audio-taped custodial confessions
proved that his intent was to rob the complainant, but the record does not show that
he intended to kill the complainant. Nevertheless, the State asserts, and we agree, that
the jury could have found beyond a reasonable doubt that appellant intentionally
caused Rivera's death when he pointed a loaded gun at him and pulled the trigger. 
Faircloth testified that one of the robbers said to him, "Don't lose your life over this." 
Rivera's hands reflected no injuries that would have likely been sustained had he
grabbed the gun, nor did they contain any gun powder residue. Officer Abby testified
to the following:

 Q. Based on your experience, if someone had their [sic] hand on top
of the semiautomatic when the weapon was fired, would you
expect to see something in the hand that was on top of the gun?


 A. Yeah, you would definitely have a pretty severe injury on the
inside of your hand.


 Q. Where the slide scraped it, or would it be burned or scraped or cut
or what? I know you're just basing this on what your experience
is with weapons.


 A. Okay. Yes, you would have a scrape mark from the slide moving
back, but what would be more damaging is as the slide moves
forward, it would probably grab the skin of your hand in between
the slide and the chamber itself.


Faircloth testified that he never saw a struggle between Rivera and the robber before
the gun went off. Appellant did not tell Gipson that he struggled with Rivera, nor did
he tell Gipson that the gun discharged accidentally. 

 We hold that the evidence, when viewed in the light most favorable to the
verdict, is legally sufficient such that a rational trier of fact could have found
appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S. Ct. 2781, 2788-89 (1979).

 The only contrary evidence is appellant's recorded statement, which stated:

 Appellant: At first I just come up to him and get the dude's money.

 Ofc. Abby: Uh huh.

 Appellant: So the dude [Rivera], and I didn't even have to say
anything, the dude go in his wallet and he, he didn't have
no money. He had emptied out all his pockets and he
didn't have nothing.


 Ofc. Abby: That's the guy in the pa-, driver's side?


 Appellant: Uh huh.


 Ofc. Abby: Okay.


 . . . 


 Appellant: I'm thinking he fixing to run like his friend run. But he
was, I had my foot out the door and the door was open. It
was like I was in the middle of getting up when he grabbed
the gun, like he grabbed my hand like right there where the
trigger guard is or whatever. And when he did that I was
. . . already coming out the car so I like pull my hand back
and then that's when the gun had went off.


The Court of Criminal Appeals has held that a defendant's own statement regarding
his intent is not enough to render the evidence, without more, insufficient. See Sells
v. State, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003) (holding that, because the only
evidence weighing against jury finding that defendant entered home with no specific
intent to commit sexual assault was defendant's own statement, this was not enough
to render evidence insufficient). Looking at all this evidence in a neutral light, we
conclude that the evidence is not so weak that the verdict is clearly wrong and
manifestly unjust; nor is the contrary evidence so strong that the standard of proof
beyond a reasonable doubt could not have been met. Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004).

 We overrule points of error eight and nine. Motion for New Trial

 In point of error 10, appellant argues that the trial court erred in overruling his
motion for new trial, where he presented evidence that "Jonathan Gipson had not told
the truth during the trial, and where Gipson's testimony was critical to the State's
case." 

Standard of Review

 We review the trial court's denial of a motion for new trial for abuse of
discretion. See Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). The
question is whether the trial court "acted without reference to any guiding rules or
principles." Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

 Motions for new trial based upon newly discovered evidence are controlled by
article 40.001 of the Texas Code of Criminal Procedure, which provides that "[a] new
trial shall be granted an accused where material evidence favorable to the accused has
been discovered since trial." Tex. Code Crim. Proc. Ann. art. 40.001 (Vernon
Supp. 2006); Keeter v. State, 74 S.W.3d 31, 36 (Tex. Crim. App. 2002). Texas
courts have used a four-part test in determining whether a trial court may grant a new
trial based on newly discovered evidence: (1) the newly discovered evidence was
unknown or unavailable to the movant at the time of his trial; (2) the movant's failure
to discover or obtain the evidence was not due to a lack of diligence; (3) the new
evidence is admissible and is not merely cumulative, corroborative, collateral, or
impeaching; and (4) the new evidence is material and would probably cause a
different result in another trial. Keeter, 74 S.W.3d at 36-37.

Analysis

 In his motion for new trial, appellant alleged that he was entitled to a new trial 
because of "newly-discovered evidence" consisting of his mother's testimony that she
believed Gipson admitted to her that he lied under oath. A hearing was conducted on
appellant's motion for new trial. Gipson testified at the hearing that he testified
truthfully when he told the jury that appellant admitted to him that he had shot Rivera. 
Sheryl Bookman, appellant's mother, testified that Gipson told her that he lied about
having conversations with appellant regarding the offense. Sheryl Bookman stated
in an affidavit that, when she approached appellant's trial attorneys about Gipson's
admissions, she was told that the evidence was already in, and that she was too late. 
Therefore, appellant's evidence was available and known during his trial. 

 Furthermore, a matter is impeaching if it seeks only to test a witness's general
credibility. Keller v. State, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984). Sheryl
Bookman's testimony merely attempts to discredit Jonathan Gipson's testimony
during trial. The new testimony was merely an attempt to impeach Gipson's
credibility. Thus, two of the four steps in the four-part test in determining whether
a trial court may grant a new trial based on newly discovered evidence have not been
met. Accordingly, we hold that the trial court did not abuse its discretion in denying
appellant's motion for new trial.

 We overrule point of error 10.
Conclusion

 We affirm the trial court's judgment.


 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).



















 
1. The State sought the death penalty.
2. The State also contends that Rule 404(b) is not implicated in this case because
appellant's statements are only "inchoate thoughts" and not extraneous bad acts. We
decline to address this contention.